Burke, J.
In this case we are confronted with two questions relating to the rights and duties of members in federally chartered savings and loan associations. The primary question is whether such a member, who possesses the right to vote in the annual election of the association’s board of directors, also possesses the collateral right, analogous to that of a shareholder in a corporation, to inspect the association’s membership list. The courts below found that such a right does exist, and we are in agreement with them on this aspect of the appeal. The second question, treated later in this opinion, deals with the necessity of “ good faith ” on the part of the member seeking to enforce such an inspection right.
It is manifest that the courts below entertained sufficient jurisdiction over the federally chartered association so as to determine the rights of its members. In Matter of Baldwinsville Fed. Sav. & Loan Assn. (268 App. Div. 414, 422-424 [4th Dept., 1944]) a similar issue was raised and the court ruled that such a Federal association was subject to the law of the State unless it conflicted with a Federal law, policy or pre-emption by Congress. Here there is no Federal statute, rule or regulation which circumscribes or proscribes the relief sought by petitioners ; Congress has not pre-empted the entire field of regulation as to such associations; arid certainly in determining the existence of such a right we are not acting in a manner which could in any way be deemed in conflict with the paramount Federal law.*
*86 Furthermore, as pointed out in Mr. Justice Saypol’s opinion at Special Term, a Federal savings and loan association is an instrumentality of the United States and, more precisely, a creature of the Home Owners’ Loan Act of 1933. (Durnin v. Allentown Fed. Sav. & Loan Assn., 218 F. Supp. 716, 718 [U. S. Dist. Ct., E. D. Pa., 1963]). For this reason no New York statute is directly applicable to the supervision and control of its internal management. (See Business Corporation Law, §§ 102, 624.) However, the enactment in this State of such statutory corporate controls as the Business Corporations Law (1875), the General Corporation Law (1892), the Stock Corporation Law (1892) and the Business Corporation Law (1961) in no way diminished the common-law safeguards already existent in this area of shareholder inspection. This court clearly so held in Matter of Steinway (159 N. Y. 250, 264-265 [1899]). As Judge Vans wrote: “ We do not think that the statute now in force is exclusive, or that it has abridged the common-law right of stockholders with reference to the examination of corporate books. By enabling a stockholder to get some information in a new way, it did not impliedly repeal the common-law rule which enabled him to get other information in another way, for the courts do not hold the common law to be repealed by implication, unless the intention is obvious. By simply providing an additional remedy the existing remedy was not taken away. The statute merely strengthened the common-law rule with reference to one part thereof, and left the remainder unaffected.” See, also, the recent case of Sivin v. Schwartz (22 A D 2d 822 [2d Dept., 1964]) wherein the court stated that ‘ ‘ In our opinion, that statute is not exclusive; and any stockholder, including one not of record, has a common-law right to inspect the stock books if the inspection is sought in good faith and for a valid purpose [citing, inter alia, Business Corporation Law, § 624, subd. (f) and Matter of Steinway, supra]. ’ ’
There is no doubt that many of the specific characteristics of a Federal savings and loan association are analogous to those of a stock corporation. The association members (both depositors and borrowers) possess rights and duties similar to those of a shareholder in a typical stock corporation, e.g., a financial interest in the association; the right to vote on *87 management policy and to elect the board of directors; proxy voting; the power to call special meetings under specified circumstances, and the right to amend the by-laws of the association. We hardly need point out that these are some of the most basic attributes indigenous to a shareholder in a corporation formed under the law of this State. (See Business Corporation Law, § 612 [voting rights in general]; § 703 [election of directors]; § 609 [voting by proxy]; § 603 [calling of special meetings]; § 601 [amendment of by-laws].) Surely a close analogy is, therefore, drawn between the functions of a shareholder in a corporation and a member in a savings and loan association. While the latter does not possess the far-reaching powers guaranteed the former by statute, their basic rights and duties are quite similar, if not identical.
On this reasoning, the Trial Judge concluded that the association’s members should be recognized as shareholders “ within the purview of the common-law right of inspection of the books and records of the corporate association.” Without the right to inspect merely the membership list of the association, how can a member in good standing, motivated by the utmost of good intentions, effectively exercise his statutory right to partake in the management of the association, to vote in a most prudent manner, to effectuate his right to have his candidate for a directorship elected by proxy, and to at least apprise his fellow members of circumstances which in his opinion are crucial to their voting prudently and wisely? Without this common-law right his statutory rights under the charter of the association are indeed “ idle gestures.”
For this reason the common-law right of inspection of membership lists in federally chartered savings and loan associations must inure to the benefit of members thereof. While it is true that an institution in the nature of a bank may be inherently sensitive to any disruption in its management and to any substantial expense incurred through the waging of a proxy fight with its dissident members, we feel that the right to be enforced outweighs the burden to be imposed. Nonetheless important, however, is the protection of the confidential fiduciary relationship engendered between a savings association and its members. Banking institutions in general are entrusted by the average citizen with a full awareness of his private financial affairs, *88 and this reliance must not be unnecessarily diluted. It is with these concepts in mind that we restrict the right of inspection of membership lists to simply the names and addresses of the borrowers and depositors, not identified as such, and with no reference to the amount borrowed or on deposit or to the number of votes possessed. In this manner it is felt that the common-law right of inspection can be enforced with a minimal amount of discomfort to those members who wish to keep their banking affairs strictly in confidence with the institution itself.
However, as mentioned at the outset of this opinion, a subsidiary question has been raised by the pleadings and affidavits in this case as to the “good faith” of the petitioners. From an examination of the authorities it is clear that this common-law inspection right is enforcible subject to the sound discretion of the Trial Judge—“upon good cause shown,” “ sought in good faith” and “for a proper purpose ”. (Matter of Steinway, 159 N. Y. 250, supra [1899].) Concededly, as petitioners argue, the desire of a stockholder to become a member of the board of directors does not constitute bad faith. (Matter of Martin v. Columbia Pictures Corp., 307 N. Y. 922 [1954].) We need not even conjecture here whether a design to remove a director motivated by personal malice would preclude the exercise of a right to inspection. However, it is clear that the institution of such a proceeding as this for the sole purpose of harassment, not motivated by any interest in the association but rather by personal gain completely apart from any benefit to the association, would constitute mala fieles which the courts of this State are loath to protect. Our case law has uniformly and without hesitation required a bona fide intention on the part of him who seeks such common-law relief. (Matter of Breswick & Co. v. Greater N. Y. Ind., 308 N. Y. 1041 [1955]; People ex rel. Althause v. Giroux Cons. Mines Co., 122 App. Div. 617, 620-621 [1st Dept., 1907]; People ex rel. Hunter v. National Park Bank, 122 App. Div. 635, 638-639 [1st Dept., 1907]; Matter of Young v. Columbia Broadcasting System, 28 Misc 2d 512 [Sup. Ct., 1959].)
As this court stated in Matter of Steinway (supra, p. 263) : “We think that, according to the decided weight of authority, a stockholder has the right at common law to inspect the books of his corporation at a proper time and place, and for a proper *89 purpose ”. (Emphasis added.) And this principle has been repeated time and time again, viz., that if an issue is raised as to the bona fide intentions of the petitioner, a factual determination must be made before any final order will issue. (Matter of Breswick & Co. v. Greater N. Y. Ind., supra; Sivin v. Schwartz, 22 A D 2d 822, 823, supra [2d Dept., 1964]; Matter of Tate v. Sonotone Corp., 272 App. Div. 103 [1st Dept., 1947].) This is as it should be. Small burden is placed on him who approaches the courts for relief motivated by " good faith " as defined above. And no legal protection is deserved by his opposite who seeks relief for some ulterior purpose.
The allegations herein clearly illustrate that a triable issue of fact has been raised as to the good faith of the petitioners. In 1962 petitioners Haberman and Schulze, through their Neptune Construction Corporation, acquired an apartment house subject to a mortgage held by respondent association. After the association declined several requests to increase the principal amount of this mortgage, in negotiating for prepayment Haberman demanded that it waive its regular prepayment charge and refund to Neptune a $19,629 origination fee which the original mortgagor, not Neptune, had paid when the mortgage was first acquired. The association refused to comply with Haberman’s demands and he carried out his threat of litigation by bringing suit on November 13, 1964 to recover the above-mentioned origination fee in which judgment was rendered against him. Five weeks later, after Haberman and Schulze had opened savings accounts with respondent, these two and Haberman’s sister-in-law, one Judith Ochs, instituted this special proceeding seeking inspection of the association’s minute book and membership list. This proceeding, argues the respondent, was commenced not because of any bona fide concern in the association, but rather solely as a harassment tactic to compel compliance with Neptune Construction Corporation’s “ unjustifiable ” demands.
On the other hand, of course, petitioners maintain that their primary objective is to effect a change in the present board of directors so as to improve the management of the association. They accuse the board of illegal conduct and unsatisfactory, incompetent and discourteous management. On the very face of the conflicting allegations a question is undoubtedly raised *90 as to the true intention, i.e., the “ good faith,” of petitioners in their attempt to obtain inspection of the respondent association’s membership list.
Furthermore, in its opinion the trial court stated that such an issue of fact was raised, but for some enigmatic reason it was considered a bar only to the inspection of the association’s minute book, not to the inspection of its membership list. There is no practical or justifiable explanation for this inconsistency, and as stated above the existence of “ good faith ” is tantamount to a condition precedent to the enforcement of a common-law inspection right. Once the motivation of a petitioner is properly questioned, a hearing must be had to determine the factual issues presented.
Thus, while it is evident that petitioners possess a common-law right to inspect the membership list of the respondent Federal savings and loan association, limited as stated above to merely the names and addresses of their fellow members, this right is qualified by the prerequisite of “good faith” when, as here, a factual question relating thereto is raised by the association.
The order of the Appellate Division should therefore be reversed and the case remitted to Special Term for a hearing and determination of the issues of fact.
Chief Judge Desmond and Judges Fuld, Van Voobhis, Scileppi, Bebgan and Keating concur.
Order reversed, without costs, and case remitted to Special Term for further proceedings in accordance with the opinion herein.

 As to the argument by appellant that petitioners failed to exhaust their administrative remedies, the General Counsel for the Federal Home Loan Bank Board concedes that a question as to proxy solicitation, the essence of the issue raised herein, would be governed by either the law of the State in which the Federal association is located or by a Federal “ common law,” which as yet remains undefined — the Home Loan Bank Board itself would provide no remedy sueh as is sought by petitioners.