**RESOLUTION TRUST CORPORATION,**
**in its corporate capacity, Plaintiff,**

v.

**Harry C. GREGOR, et al., Defendants.**

**No. 94 CV 2578 (ARR).**

United States District Court,
E.D. New York.

Dec. 1, 1994.

sulting from the federally-chartered savings and loan's ("S & L") 1991 failure.

Defendants now seek to dismiss the First and Fourth Claims, which are premised on simple negligence, and the Third and Sixth Claims, alleging liability for defendants' negligent breach of their fiduciary duty of care. While all parties acknowledge that the RTC's "gross negligence" claims are viable under the section, defendants urge a holding that § 1821(k) precludes the RTC from seeking any damages premised on simple negligence.[1] Based on the extensive briefing and oral argument that both sides have provided on this topic, I find defendants' conclusion unwarranted by the language of the statute, and I deny in its entirety their motion to dismiss.

## FACTUAL BACKGROUND

Westerleigh began in 1894 as a state-chartered S & L servicing the neighborhoods of Staten Island. With deregulation, Westerleigh, like many other S & Ls, converted from a state-chartered institution to a federally-chartered one in 1982, although it remained a primarily local institution. Transcript of Oral Argument held Nov. 10, 1994 (hereinafter "Tr.") at 49–50, 53–54. A period of expansion ensued, after which, on May 30, 1991, the Office of Thrift Supervision declared Westerleigh insolvent and appointed the RTC receiver. The following year, the RTC in its capacity as receiver of Westerleigh transferred various assets to the RTC in its corporate capacity, including rights in all actions, judgments or claims possessed by RTC-receiver against the former directors of Westerleigh.

In its efforts to recoup costs, the RTC now seeks damages from the former directors of numerous S & Ls, including Westerleigh. Among its claims are several premised on a "simple negligence" standard.

Richard W. Beckler, Michael G. McGovern, Fulbright & Jaworski, Washington, DC, Edward Dolido, Fulbright & Jaworski, New York City, for defendant Anthony A. Sirianni.

Jonathan Sinnreich, Jay Safar, Sinnreich, Wasserman, Grubin & Cahill, New York City, for plaintiff Resolution Trust Corp.

## CORRECTED OPINION AND ORDER

ROSS, District Judge:

This motion to dismiss, like many others which have been decided in a number of courts during the last several years, requires an interpretation of the preemptive force of both the Home Owners' Loan Act of 1933 ("HOLA") and § 212(k) of the Federal Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") (codified at 12 U.S.C. § 1821(k)). The Resolution Trust Corporation (the "RTC") brings this suit in its corporate capacity against the former directors of Westerleigh Savings, FSLA ("Westerleigh"), seeking to recover losses re-

---

1. Because FIRREA grants parallel powers to the Resolution Trust Corporation and the Federal Deposit Insurance Corporation under § 1821 (among other sections), opinions interpreting § 1821 are applicable to both the RTC and the FDIC, and will be cited herein without distinction. 12 U.S.C.A. 1441a(b)(4)(A); *Baumann v. Savers Federal Sav. & Loan Assoc.,* 934 F.2d 1506 (11th Cir.1991).

*Defendants' Contentions*

As defendants acknowledged at oral argument, Tr. at 5, the success of their primary argument hinges on a single premise—that federally-chartered savings and loans since their inception have been creatures of federal law, wholly-governed by HOLA. Defendants' Reply Brief (hereinafter "Def.Repl.") at 7. According to defendants, if HOLA mandates the exclusive application of federal law to all aspects of the federal savings and loan industry, then HOLA's silence on any issue involving federal S & Ls obligates courts to fashion a federal common law rule. For example, HOLA does not address the specific standard of liability of federal S & L directors, and therefore defendants contend that, before the passage of FIRREA, federal courts by necessity created their own rule of decision on this issue.

Defendants' argument continues that in enacting FIRREA's § 1821(k), Congress specifically intended to legislate a uniform standard of "gross negligence" for director liability. Because all federal common law in conflict with the language of a specific federal statute is preempted, defendants urge that § 1821(k) necessarily preempts the federal common law of director liability, leaving viable only actions charging "gross negligence" or worse, and warranting dismissal of the RTC's claims for simple negligence and breach of fiduciary duty. Under this line of reasoning, regardless of whether applicable state law might remain intact under § 1821(k), all federal common law is preempted, and because federal S & Ls are wholly governed by federal law, federal S & Ls are, post–FIRREA, wholly governed by the "gross negligence" standard.

Although the Second Circuit has not explicitly addressed this issue, defendants cannot have failed to note the all-but-unanimous case law in other jurisdictions concluding that § 1821(k) does not preempt any otherwise applicable *state* law imposing on directors a stricter standard of care than gross negligence. *See, generally,* Ronald W. Stevens and Bruce H. Nielson, The Standard of Care for Directors and Officers of Federally Chartered Depository Institutions, 13 Ann.Rev.Banking L. 169, 173 n. 17 (1994) (discussing the majority rule). As a result, defendants argue that their case is not governed by this settled case law, but rather by certain emerging (and unsettled) authority in other circuits—best exemplified by the opinion in *RTC v. Gallagher,* 800 F.Supp. 595, 602 (N.D.Ill.1992), *as aff'd by* 10 F.3d 416 (7th Cir.1993)—holding that § 1821(k) preempts federal common law to set a national standard of gross negligence for the directors of federal institutions. It is this authority that defendants seek to invoke to shield themselves against the RTC's claims.

## DISCUSSION

### HOLA Preemption

The necessary starting point in this discussion is HOLA and an analysis of whether, as defendants assert, Congress intended HOLA to preempt any and all state laws speaking to the liability of directors of federally-chartered S & Ls. Congress enacted HOLA in the early 1930s, during the Depression, to ameliorate conditions created by widespread failures in the savings and loan industry. The scheme was intended as "a radical and comprehensive response to the inadequacies of the existing state systems." *Conference of Federal Sav. & Loan Assocs. v. Stein,* 604 F.2d 1256, 1257 (9th Cir.1979), *aff'd,* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980). In enacting HOLA, Congress set out a general framework and left the regulatory details to the Federal Home Loan Bank Board (the "Bank Board").[2] The Supreme Court held that the Bank Board's authority to regulate federal S & Ls was virtually unlimited. *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 162–63, 102 S.Ct. 3014, 3027, 73 L.Ed.2d 664 (1982). Therefore, where either HOLA or the Bank Board's regulations addressed a particular question pertaining to federal S & Ls, any conflicting state rule was automatically preempted. But the different question presented here is whether, even in the absence of an explicit federal statute or regulation governing some aspect of federal S & Ls, a nonconflicting state rule is preempted nevertheless.

---

**2.** FIRREA has since partially replaced the Bank Board with the Office of Thrift Supervision.

■ As the Supreme Court has noted, the preemption doctrine is rooted in the Supremacy Clause, U.S. Const., Art. VI, cl. 2. *de la Cuesta*, 458 U.S. at 152, 102 S.Ct. at 3022. If Congress intends, either explicitly or implicitly, to displace state law completely, the federal statute or regulation will supersede the state rule. *Rice v. Santa Fe Elevator Corp*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947), *rev'd on other grounds, Rice v. Board of Trade of City of Chicago*, 331 U.S. 247, 67 S.Ct. 1160, 91 L.Ed. 1468 (1947). Where Congress has not completely displaced state regulation in a particular area, federal law may still preempt state law where "compliance with both federal and state [law] is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963), or where the state rule is "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

Defendants argue that federal law exclusively governs federally-chartered savings and loans. Def.Repl. at 7 ("state law can have no application to federally-chartered savings and loan associations"). There is indeed authority in other circuits holding that the federal HOLA scheme has since its inception completely preempted state law. As one article concluded,

> a consensus existed among the federal courts that because federally chartered savings and loan associations were subject to comprehensive federal regulation 'from [their] corporate cradle to [their] corporate grave,' federal law alone governed their internal affairs, including the issue of officers' and directors' liability.

(internal citations omitted) Stevens and Nielson, The Standard of Care, 13 Ann.Rev.Banking L. 169, 173–74 (1994).[3]

The statutes and regulations governing federally-chartered savings and loans are broad. Nevertheless, as defendants acknowledge, the federal scheme does not address director liability. Tr. at 6, 9 (defendants' counsel stated that "there is not a specific CFR cite that we could locate that talks about the duty of care ... admittedly, we look to the regulation to see if there is something that speaks directly to fiduciary duties and, admittedly, that's not there").

Rather than point to a specific federal rule governing director liability, defendants—and some case law—conclude that because HOLA governs federally-chartered institutions for many things, federal law must be applicable as well to the standard of care governing a director's fiduciary duties despite the statutory silence on the subject. Indeed, defendants assert that the entire field has been preempted by the "comprehensive" regulatory banking scheme, although the federal statutes and regulations themselves leave significant issues unaddressed. For support, they cite to *de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664. But *de la Cuesta*, which involved a conflict between state law and federal regulations, is unavailing. The *de la Cuesta* Court noted that because "Congress expressly contemplated, and approved, the [Bank] Board's promulgation of regulations superseding state law," federal regulations would necessarily preempt any conflicting state law. *Id.* at 162, 102 S.Ct. at 3027. This holding is inapposite to the question before this court, however, because there is no conflict between state law and federal statute or regulation on the issue of S & L directors' duty of care to their shareholders.

Furthermore, as discussed below pp. 10–13, courts in the Second Circuit have apparently never endorsed the view that there exists a body of federal common law of director liability that defendants now wish to see preempted. Indeed, the creation of federal common law is an option courts are

**3.** For the rule that federal law exclusively governs federal S & Ls, *see, e.g., RTC v. Hess*, 820 F.Supp. 1359, 1362 (D.Utah 1993) ("federal law exclusively governs the internal affairs of federal savings and loan associations"); *City Fed. Sav. & Loan Assoc. v. Crowley*, 393 F.Supp. 644, 655 (E.D.Wisc.1975) ("'a state court adjudicating [the fiduciary duties of directors of a federal S & L] would have to apply federal common law rules rather than the laws of its own state"); *Rettig v. Arlington Heights Fed. Sav. & Loan Ass'n*, 405 F.Supp. 819, 826 (N.D.Ill.1975) ("only federal law may be applied to questions involving" fiduciary duties of federal S & L directors).

increasingly unwilling to consider. *RTC v. Chapman,* 29 F.3d 1120, 1122 (7th Cir.1994) ("Courts should be leery of all claims invoking federal common law"); *AmeriFirst Bank v. Bomar,* 757 F.Supp. 1365, 1372 (S.D.Fla. 1991) (declining to create federal common law where state law claims are sufficient basis for federally-chartered savings and loan to bring suit against directors for breach of their fiduciary duty). The near-prohibition on the creation of federal common law has become more clear in the wake of *O'Melveny & Meyers v. FDIC,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), in which the Supreme Court refused to adopt a federal common law banking rule to supplement the extensive federal regulatory framework. Because "there is no federal general common law," any matters not specifically addressed by the federal scheme are governed by state law. *Id.* at ——, 114 S.Ct. at 2053, citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The federal courts, "unlike their state counterparts, are courts of limited jurisdiction that have not been vested with open-ended lawmaking powers." *Id.* —— U.S. at ——, 114 S.Ct. at 2056 (concurrence, Stevens, Blackmun, Connor and Souter, quoting. *Northwest Airlines v. Transport Workers,* 451 U.S. 77, 95, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981)). The RTC under the *O'Melveny* analysis is permitted to pursue state law claims *except* where some provision of the federal scheme "specifically creates a special federal rule of decision." *Id.* —— U.S. at ——, 114 S.Ct. at 2051. *O'Melveny* holds that where a federal scheme provides explicitly for preemption of state law in certain instances, to find implicit preemption where the statute is silent is not permissible. *Id.* at ——, 114 S.Ct. at 2054.

Although *O'Melveny* involved a *state*-chartered S & L, the opinion uniformly discourages the application of federal common law where a body of state law exists. At least one district court has held that the *O'Melveny* decision applies with equal force regardless of the jurisdiction of the charter. *RTC v. Farmer,* 865 F.Supp. 1143, 1150–51 (E.D.Pa.1994). *See also RTC v. Blasdell,* CIV 93–199, 1994 WL 583131 at *13 (D.Ariz. Sept. 15, 1994) ("*O'Melveny* makes clear that federal common law · is to be applied only sparingly").[4]

Furthermore, courts in this circuit have held that federal courts do not even have jurisdiction over disputes involving federally-chartered institutions, casting great doubt on the defendants' assertion that the nature of HOLA mandates the creation and application of federal common law to such institutions. Seen in this context, *O'Melveny* serves to reinforce strongly the soundness of the reasoning and conclusions of these decisions. For example, in *Curiale v. Reissman,* 798 F.Supp. 141 (S.D.N.Y.1992), note-holders brought suit against the directors of a federally-chartered bank alleging breach of fiduciary duty. The court dismissed the · action for lack of federal question jurisdiction, holding that fiduciary duty claims against directors "are defined by state law," and that "the mere fact that [an institution] is federally chartered is insufficient to merit the creation of a federal common law of directors duties." *Id.* at 144–45. The court observed that the parties "have not identified any existing federal statute or regulation defining the fiduciary duties of directors of federal savings banks, or · explicitly authorizing courts to do so." ·The court thus rejected the contention that because an institution "is subject to comprehensive federal regulation of many areas of its activities and organization," federal courts are obligated to fill in the gaps and create law on which the federal scheme is silent. The court dismissed contrary case law on which instant defendants now rely as "not persuasive."[5] *Id.* at 146.

---

4. A very recent Second Circuit opinion held that FIRREA's grant of power to the RTC to repudiate leases and contracts allows the RTC to supersede state rent control laws. *RTC v. Diamond,* 18 F.3d 111 (2d Cir.1994). Significantly, however, as the RTC now points out, the Supreme Court has just vacated the judgment and remanded to the Circuit "for further consideration in light of *O'Melveny & Meyers.*" *Solomon v. RTC,*

—— U.S. ——, 115 S.Ct. 43, 130 L.Ed.2d 5 (1994).

5. Without discussion, the *Curiale* court declined to follow *Rettig v. Arlington Heights Federal Sav. and Loan Ass'n,* 405 F.Supp. 819 (N.D.Ill.1975), which defendants now champion as the appropriate HOLA analysis. Def.Repl. at 8; *Curiale,* 798 F.Supp. at 146. The court also distinguished

*See also Austin v. Altman,* 332 F.2d 273, 276 (2d Cir.1964) (refusing to find jurisdiction over an action against bank directors, and dismissing the contention that jurisdiction exists "merely because the bank is chartered under federal law"); *Cooper v. Baldwin–Bellmore Federal Savings and Loan Assoc.,* 390 F.Supp. 874, 876–77 (E.D.N.Y.1975) (holding that in a federal S & L dispute in an area in which the Bank Board has "promulgated no regulation", and where "the plaintiffs have remedies under New York State statutes", federal courts lack jurisdiction) [6]; *Ochs v. Washington Heights Federal Sav. and Loan Assoc.,* 17 N.Y.2d 82, 85, 268 N.Y.S.2d 294, 215 N.E.2d 485 (1966) ("Congress has not pre-empted the entire field" of federal S & L regulation, and a federal S & L is therefore "subject to the law of the State unless it conflict[s] with a Federal law, policy or preemption by Congress").

Defendants try to distinguish *Austin* and *Curiale* as cases involving federally-chartered banks and not federally-chartered S & Ls. Specifically, they cite *National State Bank, Elizabeth, N.J. v. Long,* 630 F.2d 981, 989 (3d Cir.1980) and *Conference of Federal Sav. & Loan Ass'ns v. Stein,* 604 F.2d 1256 (9th Cir.1979), *aff'd,* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980), for the contention that because S & Ls "do not have the lengthy history of dual regulation that characterizes the national banking system," they should be treated differently from national banks. Def.Repl. at 4 n. 2, citing *Long* at 989. When the quoted language is placed in context, however, it is evident that the *Long* court actually reached the opposite conclusion. *Long* holds that, although savings and loans and national banks have been subject to somewhat dissimilar regulatory control, "[n]evertheless, we believe that the federal

interests implicated in the two situations are sufficiently similar to warrant like results." *Id.* Likewise, the holding of *Stein* is somewhat different from defendants' interpretation: the court there noted that in the area of "redlining" actions taken against federal S & Ls, "state-conferred rights" were permitted if they grant "greater protection" than the federal scheme. 15 U.S.C. § 1691d(f). The court concluded, however, that only the federal Bank Board had the power to *enforce* such state-conferred rights. *Stein,* 604 F.2d at 1260. Further arguing against the defendants' S & L/bank distinction is the fact that the conclusions drawn by the *Ochs* and *Cooper* courts apply specifically to S & Ls.

Defendants also attempt to distinguish *Austin* by arguing that "nowhere in the opinion is there any suggestion that ... federal law is inapposite in suits against former directors of federally-chartered banks." Def. Repl. at 4 n. 2. On the contrary, however, *Austin* stated that

> the federal courts do not have jurisdiction over suits to recover damages for the alleged misconduct of national bank directors ... [A]ctions by or against national banks may be brought in the federal courts only where an essential element of the cause of action presents a substantial federal question.

*Austin,* 332 F.2d at 276.

Thus the holdings of *Curiale* and *Austin,* as well as the *Ochs* and *Cooper* opinions, are apposite to the issue presently before the court.[7]

As discussed above, defendants are correct that a number of opinions hold that federal law exclusively governs all federally-chartered institutions. *See* authorities cited above n. 2. But there is no foundation in

---

defendants' major Second Circuit authority, *Murphy v. Colonial Federal Sav. & Loan Ass'n,* 388 F.2d 609 (2d Cir.1967), as merely "an exercise in the construction of federal regulations whose sketchy language required the court to 'flesh out' their provisions...." *Curiale,* 798 F.Supp. at 147.

**6.** *Cooper* also distinguished the *Murphy* opinion as less compelling where plaintiffs have an "alternative forum to turn to...." *Cooper,* 390 F.Supp. at 877.

**7.** Defendants further note that *Curiale* did not involve a suit by the RTC. Had the government agency been the plaintiff, defendants argue, the *Curiale* court "would [have] be[en] compelled to apply the federal law standard of gross negligence." Tr. at 17. Although *Curiale* holds that federal *jurisdiction* exists under FIRREA for suits by the RTC, that issue is not in dispute, and the court explicitly found the contention that federal law governs the duties of bank directors "without merit." *Curiale,* 798 F.Supp. at 148.

HOLA's statutory scheme for this conclusion, and the *Austin, Curiale, Ochs* and *Cooper* opinions hold otherwise, a view which finds support in other jurisdictions. *RTC v. Everhart,* 37 F.3d 151 (4th Cir.1994) (federal law does not govern federally-chartered institutions); *RTC v. Gibson,* 829 F.Supp. 1103, 1109 n. 2 (W.D.Mo.1993) ("there is nothing to suggest that officers and directors of federally chartered institutions are only subject to federal causes of action"); *FSLIC v. Shelton,* 789 F.Supp. 1360, 1363 (M.D.La.1992) (FDIC's state law claims against former directors of failed "federal bank" not preempted); *AmeriFirst v. Bomar,* 757 F.Supp. 1365, 1374 (S.D.Fla.1991) (permitting suits against directors of federally-chartered S & Ls under state law "will not interfere with the successful functioning of the comprehensive federal scheme").

■ In light of the lack of any federal statute directly addressing the standard of care governing a director of a federally-chartered S & L, the holdings of *Curiale, Austin, Ochs* and *Cooper,* and *O'Melveny*'s general prohibition against creating federal common law, defendants' contention that HOLA mandates a sweeping preemption of state laws governing S & Ls, including the fiduciary duties of their directors, is unwarranted. Rather, such authority strongly suggests that pre–FIRREA state law provided the applicable standard of liability of directors of federally-chartered savings and loans.

Defendants have urged the application here of the Fifth Circuit's holding in *Gallagher,* reasoning that before FIRREA, HOLA applied federal common law to the duties of directors of federally-chartered institutions; that § 1821(k) preempted the federal common law; and that § 1821(k), therefore, governs the duty of care of directors of federal institutions. *RTC v. Gallagher,* 800 F.Supp. 595 (N.D.Ill.1992), *as aff'd by* 10 F.3d 416 (7th Cir.1993). Because New York and Second Circuit courts have not applied federal

common law to director liability for healthy state and federal institutions, the very first step in the *Gallagher* reasoning (and the linchpin of its analysis) is inapplicable. Furthermore, even in other circuits, the Supreme Court's decision in *O'Melveny* has cast doubt on the applicability of federal common law to director liability. I conclude that state law provided the pre-FIRREA standard of liability.

### Section 1821(k) Preemption

Although defendants' primary argument concerns the preemption of federal common law, they also advance an alternative basis for dismissal. Defendants assert that FIRREA's § 1821(k) has now preempted the state law standards for the directors of federally-chartered institutions. Def.Repl. at 11–15.[8] While the RTC contends that the section preempts state law only when the state would otherwise shield directors from liability for grossly negligent or intentional conduct, defendants counter that, at least for lawsuits by the RTC against the savings and loan directors, § 1821(k) now preempts state law in favor of a gross negligence standard. FIRREA provides no support for defendants' conclusion.

Section 1821(k) reads as follows:

A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation—

(1) acting as conservator or receiver of such institution,

(2) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed by such receiver or conservator, or

(3) acting based upon a suit, claim or cause of action purchased from, assigned by, or otherwise conveyed in whole or in

8. Although defendants implicitly limit their argument to *federal* S & Ls, the reasoning they employ would seem to apply equally to all S & Ls, be they federal or state. There is nothing in § 1821(k) which distinguishes between state and federal institutions. If state law is preempted for federal S & Ls, therefore, it would be equally

preempted for state S & Ls. *Chapman,* 29 F.3d at 1126 (Posner, J., dissenting) ("the liability of directors of S & Ls which happened to have federal rather than state charters was not discussed [in § 1821(k)], even though more than half of all S & Ls were federally chartered").

part by an insured depository institution or its affiliate in connection with assistance provided under section 1823 of this title,

for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

It is undisputed that the RTC may always bring suit for gross negligence against the directors of a failed S & L, regardless of any contrary provisions of the otherwise applicable state law. As the Supreme Court wrote in its brief interpretation of the clause: "1821(k) ... permit[s] claims against directors and officers for gross negligence, regardless of whether state law would require *greater* culpability." (emphasis added) *O'Melveny*, — U.S. —, 114 S.Ct. at 2054. Thus, once an institution has gone into RTC-receivership, FIRREA at the very least preempts any state law immunizing or shielding a grossly negligent director. Here, however, defendants contend that FIRREA also preempts state law that, instead of shielding such directors, allows suits against them based on simple negligence. This position runs contrary to the language of the statute and the weight of the case law interpreting it.

As an initial matter, § 1821(d)(2)(A)(i) provides that the RTC succeeds to all rights, powers and privileges of the institution and of any stockholder. If under state law such a stockholder could have brought a simple negligence claim against a director, presumably the RTC would inherit those rights. *FDIC v. Black*, 777 F.Supp. 919, 921 (W.D.Okl.1991).

Moreover, the final sentence of § 1821(k) states that the section does not "impair or affect any right of the Corporation under other applicable law." The apparent purpose of this clause is to preserve rights the RTC otherwise would possess under other law. Nevertheless, defendants attempt to over-come the language by arguing that state law is not "other applicable law."

The defendants make the following argument: because § 1821(k) does not impair or affect the RTC's rights under "other applicable" law, it must impair the RTC's rights under *some* law. Furthermore, had Congress intended to "strengthen" the RTC's power to recover damages from financial directors, the legislators would have drafted the savings clause to state that § 1821(k) does not "impair or affect any right of the Corporation under *any* applicable law." Because Congress did not do so, the defendants conclude without elaboration that § 1821(k) preserves the RTC's rights only under applicable law "other than state law." Since the defendants argue elsewhere that the RTC's rights under federal common law is totally preempted, under their interpretation only "federal regulatory law" is preserved by the clause. Def.Repl. at 12–13. In other words, the defendants conclude that although the "savings" clause explicitly states that § 1821(k) does not impair or affect "any right" possessed by the RTC under "other applicable law," the section nonetheless implicitly impairs the RTC's rights under both state law and federal common law.

This view has been adopted by *RTC v. Camhi*, 861 F.Supp. 1121, 1129 (D.Conn. 1994), and at least one other court as well. *FDIC v. Swager*, 773 F.Supp. 1244, 1248 (D.Minn.1991) ("When examined in light of the reference to 'applicable State law' at the close of the first sentence, logic suggests that Congress intended the phrase 'other applicable law' to mean applicable law *other than* state law").

Nearly all other courts that have addressed the issue, however, have held that the savings clause preserves state law, and many conclude as well that the clause preserves all other applicable law. *See, e.g., RTC v. Chapman*, 29 F.3d 1120, 1122 (7th Cir.1994) ("[c]lauses similar to the final sentence of § 1821(k) regularly are understood to save state law against claims of preemption.... Thus the RTC may take advantage of *any* claims available to it under state law") (emphasis added); *FDIC v. Canfield*, 967 F.2d 443, 446 (10th Cir.) ("we believe that

'other applicable law' means '*all* other applicable law' ... any other law providing that an officer or director may be held liable for simple negligence survives") (emphasis in original), *cert. dismissed* —— U.S. ——, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992); *FDIC v. McSweeney,* 976 F.2d 532, 538 (9th Cir.1992) ("we find no limitation in th[e] language [of 1821(k)'s closing sentence] that would preclude the [agency] from seeking remedies available under state law"), *cert. denied,* —— U.S. ——, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993); *FDIC v. Mintz,* 816 F.Supp. 1541, 1545 (S.D.Fla.1993) (" 'Other applicable law' is generally understood to mean all other applicable law"); *Gibson,* 829 F.Supp. at 1109 n. 2 ("other applicable law" means all other law, including "state law"); *FDIC v. Black,* 777 F.Supp. 919, 922 (W.D.Okla.1991) ("the phrase 'other applicable law' in the second sentence includes state law which provides for a lesser standard of fault than gross negligence").[9]

As a result, most courts have concluded that § 1821(k) does not preempt state law simple negligence claims that would otherwise be permitted against S & L directors. *RTC v. DiDomenico,* 837 F.Supp. 623, 626–27 (D.N.J.1993) (holding "that the most reasonable interpretation is that state common or statutory law simple negligence claims are not preempted by § 1821(k)"); *FSLIC v. Shelton,* 789 F.Supp. 1360 (M.D.La.1992); *FDIC v. Williams,* 779 F.Supp. 63, 64 (N.D.Tex.1991) ("[t]his court is not persuaded that FIRREA preempts the state causes of action"); *FDIC v. Isham,* 777 F.Supp. 828, 830 (D.Colo.1991) ("the section establishes a national minimum standard of director liability but ... the states are free to impose increased liability"); *FDIC v. Fay,* 779 F.Supp. 66, 67 (S.D.Tex.1991) ("[t]he clear meaning of this section allows the [RTC] to pursue claims against a director or officer for gross negligence as well as claims other than for gross negligence"); *FDIC v. Haddad,* 778 F.Supp. 1559, 1566–67 (S.D.Fla.1991) ("a reasonable construction ... mandates that Section 1821(k) be read to preempt state common law claims against officers or directors of a failed bank for conduct which rises to the level of gross negligence or higher but not to preempt those claims against officers or directors for conduct which rises to simple negligence").

Defendants—like the *Camhi* court—assert that to preserve state law simple negligence claims would "eviscerate" 1821(k)'s gross negligence standard. Def.Repl. at 13. On the contrary, state law claims are preserved only in states where the lesser standard is permitted; in states that otherwise immunize directors, § 1821(k)'s "gross negligence" provision preempts the state rule.

Perhaps most compellingly, defendants' position that a state law simple negligence standard increases to *gross* negligence when an S & L collapses would be illogical as a matter of public policy. The Tenth Circuit has clearly explained why such an interpretation is incorrect:

[U]nder defendants' interpretation, consider the position of an officer or director of a troubled federally insured institution in a state allowing actions for negligence. Prior to failure, liability would attach for sim-

9. Defendants' further arguments based upon statutory construction are similarly unavailing. They posit that "had Congress intended the savings clause to preserve the RTC's rights under 'applicable state law,' it would have used those precise words, as it did at the close of the immediately preceding sentence and elsewhere throughout the section." Def.Repl. at 13, citing *Camhi,* 861 F.Supp. at 1130. The *McSweeney* court, faced with the same question, correctly concluded that "[t]he presumption runs the other way. Absent a clear congressional statement, preexisting statutory or common law rights or defenses are not displaced by federal enactment." *McSweeney,* 976 F.2d at 538. Likewise, defendants are incorrect when they assert that the penultimate 1821(k) sentence, in which Congress chose to define gross negligence "under applicable state law," undermines the savings clause. There, a specific reference was needed to clarify what law was to define "gross negligence".

The *Camhi* court, explaining what Congress "would" have done had it intended to preserve state law under § 1821(k), cites to the phrase "[n]otwithstanding any other provision of Federal law, the law of any State, or the constitution of any State," as provided in § 1821(c)(1) and elsewhere. *Camhi,* 861 F.Supp. at 1130. That phrase, however, lists the limited types of law preempted under that section. If, as many courts have concluded, the final sentence preserves all rights of the RTC under all other law, a comprehensive list is unnecessary.

ple negligence. After failure, liability would only attach if the officer or director could be proven grossly negligent.... As the institution struggles, therefore, section 1821(k) would create an incentive for the officers and directors to allow the bank to fail.

*Canfield,* 967 F.2d at 449.[10] Judge Posner concurs in this analysis: "There is no evidence," he writes, "that Congress believed it was creating a new immunity for directors of federal S & Ls by depriving the RTC of the benefit of state laws that imposed higher duties on directors." *Chapman,* 29 F.3d at 1126 (Posner, J., dissenting).

FIRREA's legislative history does not contradict this understanding of § 1821(k). Senator Donald Riegle, the sponsor of the bill, explained that "State law would be overruled only to the extent that it forbids the [agency] to bring suit based on 'gross negligence' or an 'an intentional tort.'" *McSweeney,* 976 F.2d at 540, citing 135 Cong.Rec. S4278–79 (daily ed. April 19, 1989). *See Home Sav. Bank, F.S.B. v. Gillam,* 952 F.2d 1152, 1161 (9th Cir.1991) (relying on Senators Riegle and Garn's "section-by-section analysis of FIRREA"). The Senate Report explained that § 1821(k) "does not prevent the [agency] from pursuing claims under State law or under other applicable Federal law ... for violating a lower standard of care, such as simple negligence...." *Gallagher,* 10 F.3d at 421, citing S.Rep. No. 19, 101st

Cong., 1st Sess., 135 Cong.Red. S6907, 6912 (daily ed. June 19, 1989).

Defendants urge the court to rely instead on the House Conference report, which states that the § 1821(k) preemption "allows the [agency] to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including intentional tortious conduct." *RTC v. Miramon,* 22 F.3d 1357, 1363 (5th Cir.1994), citing H.R.Conf.Rep. No. 222, 101st Cong 1st Sess. 393, 398 (1989), reprinted in 1989 U.S.C.C.A.N. 432, 437. Based on this report, one court declared the legislative history "contradictory and certainly not dispositive." *FDIC v. Mintz,* 816 F.Supp. 1541, 1545 (S.D.Fla.1993).

Although the Senate Report is not amenable to alternative readings, the House Report is ambiguous. Where the history is unclear, the "plain language" of the law is regarded as conclusive. *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990); *United States v. Morgan,* 922 F.2d 1495, 1496–97 (10th Cir.), *cert. denied,* 501 U.S. 1207, 111 S.Ct. 2803, 115 L.Ed.2d 976 (1991).

▮ In sum, because this circuit does not reject application of state law to the duties and liabilities of S & L directors, I conclude that the final section of 1821(k) preserves any otherwise applicable state law negligence claims.[11] New York state law therefore gov-

---

10. Defendants' counsel dismisses this concern as "a little far-fetched." Tr. at 23–24. However, this reverse incentive is eliminated only if § 1821(k) somehow makes "gross negligence" the applicable standard of director liability for all S & Ls, even healthy institutions. Under those circumstances, the standard would remain uniform before and after the S & L fell into receivership. But a reading of § 1821(k) finding it applicable to a healthy S & L is untenable. This section says nothing about S & Ls that are neither in receivership nor receiving assistance under § 1823, nor does it speak to suits brought by parties other than the governmental bodies created by FIRREA.

11. Because I have concluded that federal common law does not govern defendants' liability as directors, it has not been necessary to reach the question of § 1821(k)'s preemptive effect on federal common law. Notably, however, there is nothing in the clause's preservation of "other applicable law" which suggests that other state

law should be treated any differently from other federal common law (or other federal regulatory law, the only law the defendants are willing to let stand). The section states, simply and clearly, that it preserves "other applicable law." The opinions that have held that all other law is preserved—as opposed to all other *state* law—are most consistent with the language of the statute. *Canfield,* 967 F.2d at 446; *McSweeney,* 976 F.2d at 538 n. 7; *Gibson,* 829 F.Supp. at 1109 n. 2. Under this interpretation, § 1821(k)'s saving clause preserves federal common law to the same extent as state law. But because the viability of federal common law has been questioned by *O'Melveny,* even a jurisdiction which once applied the federal common law of director liability will possibly be led back to state law.

Any other conclusion would require a determination that § 1821(k) draws a distinction between federal and state institutions, nowhere evident from the language of the statute. Indeed, as Judge Posner wrote in his persuasive *Chapman* dissent,

erns the standard of care of the defendant directors, and if New York provides for a simple negligence standard of liability, the savings clause of § 1821(k) preserves that standard.

### The Internal Affairs Doctrine

In addition to asserting that HOLA has preempted the entire field of federally-chartered S & Ls, defendants contend in the alternative that courts should apply an "internal affairs" analysis. In general, under New York law, the New York courts "look to the law of the state of incorporation in adjudicating a corporation's 'internal affairs' ". *Galef v. Alexander,* 615 F.2d 51, 58 (2d Cir. 1980): *In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 436 (S.D.N.Y.1993) ("under New York's choice of law principles, claims arising out of corporate internal affairs are governed by the law of the state of incorporation"), *aff'd,* 17 F.3d 600 (2d Cir.1994). Defendants thereby urge the application of federal law for all federally-chartered institutions. It is unnecessary to decide whether a federal charter subjects an institution to the law of the federal government in the same manner in which a business is subjected to the law of the state of incorporation, because even under this analysis, reason demands that state law apply to the fiduciary duties of Westerleigh's directors. *RTC v. Everhart,* 37 F.3d 151 (4th Cir.1994); *Chapman,* 29 F.3d at 1127 (Posner, J., dissenting).

■ In disputes involving directors' liability, there is indeed a presumption in favor of applying the law of the state of incorporation. Restatement (Second) of Conflict of Laws § 309 and comment c (1971). However, automatic reference to such law is rejected. *Norlin Corp. v. Rooney, Pace Inc.,* 744 F.2d 255, 263–64 (2d Cir.1984). The presumption is rebutted when another state has a more "significant" relationship with the parties and the dispute at issue, as determined by reference to three factors: 1) justified expectations; 2) certainty; and 3) "ease in the deter-

mination and application of the law to be applied." Restatement (Second) of Conflict of Laws §§ 6(2)(s), 6(2)(f), 6(2)(g), 309 (1971).

The first factor, justified expectations, favors the application of New York law. For nearly a century, Westerleigh was a local, state-chartered institution, subject to New York law. When it converted to a federal charter, it remained a local institution, and nothing in the nature of its conversion could have led the directors to believe that their duties to Westerleigh were now different. 12 U.S.C. § 1464(i)(1); *Chapman,* 29 F.3d at 1127 (Posner, J., dissenting). Furthermore, neither New York nor Second Circuit law would have justified defendants' alleged "expectations" that a federal common law rule would govern their duties.

Discussing the second and third factors, "certainty" and "ease in the determination and application" of the law, Judge Posner concluded,

> This case well illustrates the difficulty of determining the rule of decision if federal law, the law of the chartering jurisdiction, is applied instead of the law of the S & L's principal place of business. For it is far from clear that section 1821(k), rather than federal common law, is the place to find that rule, and it is also unclear ... just what the federal common law rule is.

*Chapman,* 29 F.3d at 1127 (Posner, J., dissenting). This reasoning is dispositive. Because it is "far from clear" that § 1821(k) provides the applicable standard, a court applying federal law would turn to the common law rule, an option now prohibited in the wake of *O'Melveny.* Furthermore, the federal common law on the subject is ambiguous and difficult to apply. Therefore, under an internal affairs analysis, a court determining which law to apply to director liability is led, once again, to the state rule.

### New York State Law Governing Directors' Liability

■ The parties dispute the applicable standard of director liability under New York

---

The liability of directors of S & Ls which happened to have federal rather than state charters was not discussed [in the legislation], even though more than half of all S & Ls were federally chartered. The likeliest reason for the apparent oversight is that there was no

history of having to decide which jurisdiction's law would govern a particular dispute over director's liability....

(internal citations omitted) *RTC v. Chapman,* 29 F.3d 1120, 1126.

law, with the RTC asserting that the state has long permitted suits for negligent conduct, and defendants countering that the RTC's authority has been overruled by the advent of the "Business Judgment Rule." The hornbook law the RTC argues is "seminal", RTC Brief at 31, and defendants describe as pre-war, Def.Repl. at 15, 17, confirms that the director of a "banking institution" may be held liable in simple negligence. *Litwin v. Allen,* 25 N.Y.S.2d 667, 678 (Sup. Ct.1940) ("in order to determine whether transactions approved by a [bank] director subject him to liability for *negligence,* we must 'look at the facts as they exist at the time of their occurrence....'") (emphasis added) (internal citations omitted). New York commentary agrees:

> while a director of a bank is held to stricter accountability than the director of an ordinary business corporation, if the bank director uses that degree of care ordinarily exercised by prudent bankers he will be absolved from liability although his opinion may turn out to have been mistaken and his judgment faulty.... [D]irectors of a bank who have been guilty of a breach or neglect of duty in this respect are liable for losses which are the proximate results of their negligence.

9 NY Jur.2d Banks and Financial Institutions § 147, 387–88 (1980, 1994). The banking statute requires "that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like position." NY Banking Law § 7015(1). *See Broderick v. Marcus,* 152 Misc. 413, 272 N.Y.S. 455, 461 (Sup.Ct.1934) (noting "the higher standard of diligence required of banking directors as compared with that of other corporations").

Defendants criticize this rule and its supporting authority as dated, but they have failed to demonstrate that the rule has changed. They cite *Stern v. General Elec. Co.,* 924 F.2d 472 (2d Cir.1991) as "dispositive," but that case did not involve a savings and loan or other banking institution. They also cite a journal article which offers *Kamin v. American Express Co.,* 86 Misc.2d 809, 383 N.Y.S.2d 807, 811 (Sup.Ct.), *aff'd,* 54 A.D.2d 654, 387 N.Y.S.2d 993 (App. Div.1976), as

authority for a gross negligence standard for S & L directors in New York, even though *Kamin,* too, did not involve an S & L or banking institution. Stevens and Nielson, The Standard of Care, 13 Ann.Rev. Banking L. 169, 216, 232 n. 243. Although defendants cite a commentator who criticizes the New York rule as "sparse and relatively dated," John K. Villa, Bank Directors', Officers' and Lawyers' Civil Liabilities 94–95 (4th ed. 1993), at least one source has reached the opposite conclusion:

> Because financial institutions assume quasi-public characteristics as they receive and safekeep the public's funds, *often* their directors and officers are held to a higher standard of care than in the case of an ordinary private corporation.

(emphasis added) Robert F. Finke and Priscilla P. Weaver, et al., FIRREA and Officer and Director Liability, C880 ALI–ABA 613, 639 (1994) (citing *Francis v. United Jersey Bank,* 87 N.J. 15, 432 A.2d 814 (1981)). Furthermore, other jurisdictions continue to follow the New York rule. *Billman v. State of Maryland Deposit Ins. Fund Corp.,* 88 Md. App. 79, 593 A.2d 684, 697 (1991) (citing *Broderick* to find standard of ordinary prudence and noting that "a national bank is not a private corporation in which stockholders alone are interested"), *cert. denied,* 325 Md. 94, 599 A.2d 447 (Md.1991).

Defendants finally argue that, in the wake of the development of the Business Judgment Rule in New York state, older cases on bank directors' liability have lost their vitality. But defendants have presented no New York authority applying the Business Judgment Rule to bank directors, and have admitted that, to the best of their knowledge, none exists. Tr. at 30. Although it may be true that no court has recited the old New York rule in over fifteen years (and even then only summarily, in passing), *In re Franklin Nat'l Bank Sec. Litig.,* 2 B.R. 687, 708 n. 11 (E.D.N.Y.1979) ("[b]anking directors are held to a higher standard"), *aff'd,* 633 F.2d 203 (2d Cir.1980), defendants have offered no justification for rewriting state law that has remained unchanged for at least one hundred years.

*Statute of Limitations*

■ Defendants have also challenged most of the allegations in the complaint as barred by the statute of limitations. The parties agree that in analyzing a statute of limitations, the initial inquiry under FIRREA is whether, at the time the savings and loan went into receivership, claims could have been brought on behalf of the corporation. Tr. at 76, line 16; Def.Repl. at 18 ("if the applicable statute of limitations had run ... before the RTC was appointed receiver, those claims are time barred"). Both sides further agree that *at that time,* the claims asserted by the RTC were vital.[12]

But then the parties diverge: the RTC contends that today this *remains* an action under C.P.L.R. § 213(7) "on behalf of a corporation against a ... former director ... to recover damages for waste or for an injury to property or for an accounting in conjunction therewith." *See Freer v. Mayer,* 796 F.Supp. 89, 94 (S.D.N.Y.1992). Under § 213(7), the statute of limitations is six years. Defendants counter that the transfer of Westerleigh's claims from the RTC as receiver to the RTC in its corporate capacity changed the nature of those claims, because the RTC in its corporate capacity sues "in the public interest". *RTC v. Sands,* 863 F.Supp. 365, 369 (N.D.Tex.1994). Here, in defendants' view, § 213(7) cannot apply, and the applicable statute is instead C.P.L.R. § 214(4), which allows for general breach of fiduciary duty claims and applies a three-year statute of limitations.[13]

Defendants' argument is unconvincing. The *Sands* court merely held that where the RTC sues in its corporate capacity, defendants are precluded from asserting certain defenses which would have been valid against the corporation or against the receiver. *See also FDIC v. Benjes,* 815 F.Supp. 1415, 1417 (D.Kan.1993) (negligence of bank's directors not imputable to FDIC in its corporate capacity); Finke and Weaver, FIRREA and Officer and Director Liability, C880 ALI–ABA 613, 631–38 (1994). That defendants in suits by the corporate-RTC have fewer defenses at their disposal does not imply that the underlying claim has been extinguished. No compelling rationale exists for rejecting § 213(7) as the applicable statute.

In support of § 214(4), defendants cite to a plethora of opinions dating back to 1942, none of which involved a situation relevant to the issue presented today.[14] Rather, a com-

**12.** In argument, defendants' counsel stated that, at the time of receivership, the RTC "could have sued on behalf of Westerleigh." Tr. at 37.

**13.** The defendants also raise the possibility that Westerleigh was not a corporation. Even if defendants were in a position to adduce factual support for their assertions, a factual argument that the bank was not incorporated is not properly raised on a motion addressed to the face of the pleadings.

Their argument is otherwise unpersuasive. Citing *Equibank v. Albright,* 86–CIV–6855, 1987 WL 15628 at *1 n. 1 (E.D.Pa. Aug. 12, 1987), defendants maintain that S & Ls are by definition not corporations for § 213(7) purposes. Def. Repl. at 20. *Equibank,* however, held only that a state bank chartered in Pennsylvania was not a corporation. Furthermore, in argument, counsel acknowledged that some S & Ls are corporations, and that Westerleigh "could have been." Tr. at 42. *See also* Def.Repl. at 7–8 (in which defendants argue that federal S & Ls should be governed by federal law from cradle to "corporate grave"); Michael P. Mallow, Banking Law and Regulation, Vol. III, § 10.3.2. at 10.47 (1994) (discussing "[t]he corporate existence" of savings associations, including federal S & Ls). Based on this fluid view of Westerleigh's corporate status, and without any factual showing or

legal authority, Tr. at 43, line 1–2, defendants assert that Westerleigh was a corporation for purposes of the Business Judgment Rule, Def. Repl. at 16, and the internal affairs doctrine, Def.Repl. at 6–8, both of which they seek to invoke. Defendants' position is further undercut by counsel's acknowledgement that at the time of the S & L's failure, the RTC could have brought suit, which, under their later reasoning, would not have been possible if Westerleigh were not a corporation. Tr. at 37.

**14.** *See, e.g., Salzmann v. Prudential Securities, Inc.,* 91 CV 4253, 1994 WL 191855 (S.D.N.Y. May 16, 1994) (a broker's fiduciary duty to his client is governed by three-year statute of limitations); *Geren v. Quantum Chemical Corp.,* 832 F.Supp. 728 (S.D.N.Y.1993) (action by bondholder against corporation governed by three-year-statute of limitations); *Varnberg v. Minnick,* 760 F.Supp. 315, 333 (S.D.N.Y.1991) (fraud suit against investment adviser governed by six-year statute of limitations); *Cohen v. Goodfriend,* 665 F.Supp. 152, 159 (E.D.N.Y.1987) (fraudulent breach of attorney-client fiduciary duty governed by six-year statute of limitations); *Posner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 469 F.Supp. 972, 980 (S.D.N.Y.1979) (fraud claim against broker governed by six-year statute of limitations period).

mon sense reading of § 213(7) and the absence of any authority to the contrary both mandate a six-year limitations period.[15] The state law claims remain viable.

*Judicial Estoppel*

Defendants seize on the national ambiguity in the written law interpreting § 1821(k), and specifically the RTC's own statements on the federal/state distinction, to claim that the RTC is now precluded from arguing before this court positions which conflict with positions the agency has taken in the past.[16] As the Seventh Circuit has written,

> In *O'Melveny & Myers*, the [RTC] wanted the Court to apply federal law, because that would increase its damages; here the banking agency clamors for state law, for the same reason.... [T]he RTC (in this case) seem[s] uninterested in applying neutral principles of law.

(internal citations omitted). *Chapman*, 29 F.3d at 1124.

■ Such behavior, however, does not support defendants' claim that the RTC is estopped from making a conflicting argument today. In this court,

> [j]udicial estoppel is a rarely used doctrine and exists to protect the court, not a party, from a party's chicanery. The principle is that if you prevail in Suit #1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events.

*Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 840 F.Supp. 211, 219 (E.D.N.Y. 1994) (citations omitted). Defendants have not demonstrated that the facts of this case fit within the judicial estoppel rule. Indeed,

**15.** In view of the holding that the six-year statute of limitations applies, it is unnecessary to consider the RTC's argument that the statute of limitations was tolled through either the federal "adverse domination" theory or New York's "equitable estoppel" rule.

**16.** In July, the RTC argued that the internal affairs doctrine mandated the application of federal law to "the fiduciary duties of directors and officers of federal savings and loan associations[.]" (Plaintiff's Brief in *RTC v. Cityfed Fin. Corp.*, 94–5307, at 13, citing *Rettig v. Arlington Heights Fed. Sav. & Loan Ass'n*, 405 F.Supp. 819, 826 (N.D.Ill.1975)). Earlier this year, the RTC submitted *Chapman* to the Fourth Circuit, argu-

the RTC's position has been so malleable over the course of even the last few months that, were the agency estopped from today making an argument which conflicts with one of its earlier positions, it would never again be permitted to make any argument in any court in support of its claims, a result surely unintended by the limited estoppel doctrine.

### CONCLUSION AND ORDER

For all of the foregoing reasons, defendants' motion to dismiss is denied in full.

It is so ordered.

ing that "we should look to the place of incorporation to determine the controlling law and that [for federally chartered savings and loans], federal common law controls." *Everhart*, 37 F.3d at 153. And two years ago, the RTC argued that all banks with federal charters are governed exclusively by federal law. *RTC v. Farmer*, 823 F.Supp. 302, 306 (E.D.Pa.1993). On November 15, 1994, the RTC brought to this court's attention *Solomon v. RTC*, —— U.S. ——, 115 S.Ct. 43, 130 L.Ed.2d 5 (1994), an opinion rejecting arguments the RTC asserted earlier this year while simultaneously bolstering arguments the RTC asserts today.