David FREER, Jr., as a shareholder suing derivatively in the right of Progressive Bank, Inc., Plaintiff,

v.

E. Hale MAYER, Thomas C. Aposporos, Donald B. Dedrick, John J. Page, Elizabeth P. Allen, Francis H. Carey, George M. Coulter, Harold Harris, Richard T. Hazzard, Armando Mostachetti, Richard Novick, Peter Van Kleeck, and Progressive Bank, Inc., Defendants.

No. 91 Civ. 2519 (GLG).

United States District Court, S.D. New York.

June 10, 1992.

Serchuk & Zelermyer (Benjamin Zelermyer, Laurence S. Moy, of counsel), White Plains, N.Y., for plaintiff.

Cuddy & Feder (Thomas R. Beirne, of counsel), White Plains, N.Y., for all defendants except E. Hale Mayer.

OPINION

GOETTEL, District Judge.

Although we have set out the facts of this case in two previous decisions, *Freer v. Mayer*, No. 91 Civ. 2519, 1991 WL 355062 (S.D.N.Y. April 26, 1991), *Freer v. Mayer*,

**90**

No. 91 Civ. 2519 (S.D.N.Y. May 8, 1992), we will recite them here in detail.

Progressive Bank, Inc. is a New York holding company whose only subsidiary is the Pawling Savings Bank, with its headquarters in Dutchess County, New York and 16 branch locations in surrounding counties. Progressive's shares trade over the counter on the NASDAQ system. Until 1988, Progressive experienced consistent growth and profits. In 1989, however, the company posted a loss of roughly $500,000. A loss of $8.6 million on income of $63 million was realized in 1990. By the time this action was commenced in 1991, estimates placed first quarter losses at $2 million. The current recession appears to have taken its toll on yet another savings bank.

E. Hale Mayer became Chairman of the Board and Chief Executive Officer of Progressive when the company was formed in 1986. Previously, he worked with Pawling Savings Bank for over 20 years, his most recent position being President. On December 1, 1989, Mayer and Progressive signed a five year Employment Agreement, providing that if Mayer were terminated without cause, he would receive a sum equalling the greater of either one year's salary or essentially the remaining value of the Employment Agreement.

In a letter dated November 21, 1990, Mayer offered to take early retirement from Progressive because he believed that there was insufficient merger and acquisition work at the company to fully occupy him. Although depositions suggest that the Progressive directors generally opposed Mayer's early retirement, by February 13, 1991, the directors determined that it would be in the best interests of the company to accept Mayer's proposal to retire.[1] Accordingly, a "Liaison Committee" was formed and met with Mayer to negotiate an early retirement plan.

At a special meeting on March 6, 1991, the Liaison Committee presented the terms of the agreement to the boards of Progressive and Pawling. Mayer did not participate in the meeting. After discussing the agreement, it appears that changes were proposed and the revised agreement was then accepted by a unanimous vote. The resulting Retirement Agreement, effective March 8, 1991, provided that Mayer would receive the remainder of his 1991 salary (equalling over $200,000), a lump sum payment of $300,000, and $80,000 per year in 1992, 1993, and 1994. In addition to collecting pension and other benefits, Mayer would continue his position as a Director of Progressive. Mayer, in return, agreed not to buy or sell more than 1,000 shares of Progressive stock without approval of the Board of Directors, not to participate in any fight for control of Progressive, and not to solicit banking business from any person who currently or in the previous six months had banked with the Pawling Savings Bank. This Retirement Agreement abrogated Mayer's Employment Agreement previously in effect, with payments somewhat less than would have been called for under it.

The 1991 annual meeting of Progressive shareholders was scheduled for April 30, 1991. The original proxy statement concerning the election of an unopposed slate of nominees for the Board of Directors sent by Progressive stated that "[p]ursuant to the terms of the new agreement, Mr. Mayer received a lump sum payment, will receive payments during the remainder of 1991 equivalent to what he would have received had he remained an employee of Progressive, and, beginning January 1, 1992, he is to receive equal periodic payments over a period of three years."

On April 3, 1991, shareholder David Freer demanded that he be provided with the details of the Retirement Agreement and an explanation of the underlying business purpose. Freer then filed this suit on April 11, 1991,[2] and moved to enjoin the

1. Plaintiff alleges that this decision was motivated by Mayer's uncooperative and disruptive conduct.

2. The original complaint, brought as a shareholders derivative suit, focused on the purported failure of the directors to fully disclose material information concerning the Retirement Agreement in the proxy statement, in violation

shareholder meeting. Along with a new proxy form, a letter dated April 12, 1991 was subsequently sent to Progressive shareholders, supplementing the original proxy materials and describing the financial details of the Agreement and the initiation of the litigation, as well as other matters. The timing of these actions indicates that the supplemental proxy was sent in response to the filing of this suit.

The motion to enjoin the Progressive 1991 shareholders meeting was denied.[3] The meeting was held on April 30, 1991, and the shareholders duly elected four members of the thirteen member board.[4] Several weeks later, the plaintiff amended the complaint, still a derivative action, to include another § 14(a) claim and a claim that the election of the directors was illegal and invalid. The new § 14(a) claim focused on the purported inadequacy of the supplemental proxy statement Progressive sent to its shareholders on April 15, 1991. The complaint alleges that the supplemental proxy failed to disclose the business purpose justifying the making of the Retirement Agreement, and violated the requirements of Item 103 of SEC Regulation S–K by failing to fully describe these legal proceedings.[5]

All of the defendants, with the exception of E. Hale Mayer (who earlier moved unsuccessfully on different grounds), now move for summary judgment, dismissing all five counts of the amended complaint.

## DISCUSSION

The Federal Rules of Civil Procedure permit summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56(c). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *See EAD Metallurgical, Inc. v. Aetna Casualty & Sur. Co.*, 905 F.2d 8, 10 (2d Cir.1990). The moving party has the initial burden of demonstrating that there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The non-movant then must make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If no rational fact-finder could find in the non-movant's favor then there is no genuine issue of material fact, and summary judgment is appropriate. *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir.1991).

*The Proxy Claims under Section 14(a) of the 1934 Securities Exchange Act*

Section 14(a) of Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), prohibits the solicitation of proxies in violation of the rules and regulations of the Securities and Exchange Commission. Rule 14a–9, 17 C.F.R. 240.14a–9, states that

> no solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meet-

---

of section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a). There were also allegations that in approving the agreement, the directors breached their fiduciary duty to shareholders and that the Retirement Agreement constituted waste of corporate assets.

3. The motion was denied on the grounds that there was little likelihood of success on the merits of the § 14(a) claim.

4. Three of the nominees already served as directors of Progressive, but the fourth was nominated for the first time.

5. The amended complaint also alleges various improprieties at the shareholders meeting. Defendant Thomas C. Aposporos, Chairman of the Board of Progressive, allegedly ignored a shareholder's complaint that the proxy statement was confusing, and he refused to entertain a shareholder's seconded motion to adjourn the meeting until information about the Retirement Agreement was furnished to all shareholders. Plaintiff, however, fails to cite any law under which these actions are prohibited.

ing or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

The amended complaint claims that both the original proxy statement and the supplemental proxy, issued after plaintiff filed this suit, violate the securities laws. Plaintiff objects to the content of the first mailing which was sent to solicit proxies for the election of four directors of the Progressive Bank on the grounds that this proxy failed to disclose the terms of the Retirement Agreement executed in favor of E. Hale Mayer and its business purpose. A letter supplementing the information in the proxy and containing the terms of the Retirement Agreement was mailed on April 15, 1991, after the filing of this suit, with a new proxy form to be completed by the shareholder. This mailing did not disclose a business purpose for the Agreement either. Plaintiff contends that the second mailing is deficient for failing to disclose a business purpose for this "transaction".[6]

■ It is well-settled that an omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how

to vote. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); *Mendell v. Greenberg*, 927 F.2d 667, 673 (2d Cir.1990), *modified*, 938 F.2d 1528 (2d Cir.1991). *See also Virginia Bankshares, Inc. v. Sandberg*, — U.S. ——, 111 S.Ct. 2749, 2760, 115 L.Ed.2d 929 (1991). Two proposals were submitted for the Progressive shareholders' consideration; only one, the election of the four directors, has any relationship to the missing information. It is plaintiff's position that the shareholders needed to know the directors' reasons for executing the Retirement Agreement so that in casting their votes, the shareholders understood the directors' view of their fiduciary obligations.

There is no requirement that directors reveal the rationale for a business transaction described in a proxy. "A proxy statement need not disclose the underlying motivations of a director or major shareholder *so long as* all objective material facts relating to the transaction are disclosed." *Mendell*, 927 F.2d at 674 (emphasis in original); *see Rodman v. Grant Found.*, 608 F.2d 64, 70–71 (2d Cir.1979); *Lewis v. Potlatch*, 716 F.Supp. 807, 809 (S.D.N.Y.1989). Progressive's Annual Report for 1990 which was mailed to the shareholders along with the original proxy described a bank in precarious financial condition. The supplemental letter revealed all of the important terms of the Retirement Agreement in addition to the terms of Mr. Mayer's Employment Agreement so that comparisons could be

---

**6.** Plaintiff also claims that the enclosure of a second proxy with the supplemental letter was so confusing as to be misleading. He argues, on the basis of some anecdotal evidence, that it was unclear what was to be done with the second proxy. Although the letter does not explicitly say that it is supplementing the proxy, we think that the purpose of the letter and the purpose of the second proxy were nevertheless clear when considered in conjunction with the original proxy statement. We also think it is reasonable to expect a shareholder to consider the two documents together in light of these circumstances.

Freer also contends, relying on Item 7(a) of Schedule 14A, 17 C.F.R. 240.14a–101, and Instruction 4 of Item 103 of Regulation S–K, 17

C.F.R. 229.103, that the supplemental proxy was deficient because it failed to disclose the specifics of this lawsuit. Item 103 requires a description of any material proceeding in which directors are adverse to Progressive. The description must contain the name of the court in which the proceeding is pending, the principal parties, a description of the factual basis alleged to underlie the suit and the relief sought. With the exception of disclosing the specific name of this court, all of the other required information was contained in the supplemental proxy. The name of the court in which this action was proceeding is not significant to a reasonable investor in deciding how to vote. *See TSC Indus.*, 426 U.S. at 449, 96 S.Ct. at 2132.

made.[7]

Other than revealing their reasons for entering into this agreement, there was nothing more to disclose about the transaction. Any negative inferences regarding the wisdom of this "golden parachute" could easily be drawn by the shareholder from the available information. *See Mesh v. Bennett*, 481 F.Supp. 904, 905 (S.D.N.Y. 1979) (no violation of § 14(a) because cost of modification to stock purchase plan could have been obtained by the plaintiff by making computation based on information stated in proxy). *See also Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992) (failure to disclose initial proceedings in management-led leveraged buyout does not violate Rule 10b–5 where company had previously announced its intent to consider any legitimate proposal to acquire company). If the shareholder believed that the execution of the Retirement Agreement was a business decision which reflected poorly on a particular director, he or she could vote against that director's election. But, the directors were under no duty to disclose their motives, either pure or unclean, so long as all of the information concerning the deal was revealed in the supplemental proxy. "To recognize liability on mere disbelief or undisclosed motive without any demonstration that the proxy statement was false or misleading about its subject would authorize § 14(a) litigation confined solely to ... the 'impurities' of a director's 'unclean heart'." *Virginia Bankshares*, 111 S.Ct. at 2759 (citing *Stedman v. Storer*, 308 F.Supp. 881, 887

(S.D.N.Y.1969)). "But it is bemusing, and ultimately pointless, to charge that directors perpetrated a 'material omission' when they failed to (a) discover and adjudge faithless motives for their actions and (b) announce such a discovery in reporting the products of their managerial efforts and judgment." *Stedman v. Storer*, 308 F.Supp. at 887.[8]

■ If plaintiff had alleged that the directors had abrogated their duty of loyalty to the shareholders because of self-interest,[9] *see Mendell v. Greenberg*, 927 F.2d at 674 (substantial estate tax liability of controlling shareholders may be important to shareholders determining whether to endorse sale of the company), or illegal conduct, *see Weisberg v. Coastal States Gas Corp.*, 609 F.2d 650, 654 (2d Cir.1979) (information concerning bribes and cover-up by management committee may be material to shareholder, requiring inclusion in proxy statement), then a statement of motive might "significantly alter[ ] the 'total mix' of information made available" to the shareholder, *TSC Indus.*, 426 U.S. at 449, 96 S.Ct. at 2132. But the amended complaint contains no such allegations nor has plaintiff come up with anything more than the directors were "buddies" with Mayer. There is no duty to disclose mere mismanagement. *In re Meridian Sec. Litig.*, 772 F.Supp. 223, 228 (E.D.Pa.1991).[10]

■ In holding that the plaintiff does not have a claim actionable under § 14(a), we are not passing on the merits of his claims for breach of fiduciary duty or corporate

---

**7.** The original proxy statement was deficient because the terms of Mayer's Retirement Agreement were not disclosed to the shareholders in violation of 17 C.F.R. §§ 240.14a–101 and 229.-402. Plaintiff agrees that this particular defect was remedied by the supplemental proxy.

**8.** The decision continues:

The securities laws, while their central insistence is indeed upon disclosure, were never intended to attempt any such measures of psychoanalysis or reported self-analysis. The unclean heart of a director is not actionable, whether or not it is 'disclosed', unless the impurities are translated into actionable deeds or omissions both objective and external.

*Stedman v. Storer*, 308 F.Supp. at 887.

**9.** Mayer, the only self-interested director, did not vote on the transaction. Moreover, his interest is readily apparent from the fact that he, alone, stood to personally benefit from the Agreement.

**10.** Plaintiff has also argued he need not prove that the omissions or misstatements decisively affected voting even though this was an uncontested election. This is a correct proposition but is only one part of the analysis. Plaintiff still must show that there were false and misleading statements in the proxy. *See In re Meridian Sec. Litig.*, 772 F.Supp. at 229 (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988)).

waste. However, a breach of the duties imposed by state corporate law does not give rise to a federal claim so long as the full disclosure as required by Rule 14a–9 has been made. *Rodman v. Grant Found.*, 608 F.2d at 70. *See Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 474–80, 97 S.Ct. 1292, 1301–04, 51 L.Ed.2d 480 (1977) (breach of corporate fiduciary duty does not create a cause of action under Rule 10b–5).

Summary judgment is granted in favor of the defendants on counts 1 and 4 of the complaint.

*State Claims*

■ Under 28 U.S.C. § 1367(c)(3) (1990), the "district courts may decline to exercise supplemental jurisdiction over a [state] claim if the district court has dismissed all claims over which it has original jurisdiction." As a result of our granting summary judgment to the defendant on the § 14(a) claim, there no longer exists a federal question in this suit. Whether to continue hearing the state claims is conferred to our broad discretion. *Id.; see Maybee v. Town of Newfield,* 789 F.Supp. 86 (N.D.N.Y.1992).

Under the judge-made doctrine of pendent jurisdiction which was codified in § 1367, the federal courts had the authority to hear state claims which derived from a nucleus of operative fact common to the federal claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). However, when the federal claims were dismissed before trial, it was generally accepted that the state claims must be dismissed as well. *Id.* at 726, 86 S.Ct. at 1139; *Town of Hartford v. Operation Rescue,* 915 F.2d 92, 104 (2d Cir.1990); *Iroquois Indus., Inc. v. Syracuse China Corp.,* 417 F.2d 963, 970 (2d Cir.1969). As under § 1367, taking jurisdiction of pendent state claims was vested in the sound discretion of the trial court. *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 732 F.2d 38, 42 (2d Cir. 1984). Thus, for guidance, we may turn to

the body of law governing the retention of jurisdiction over state claims when the federal claim providing the basis for original jurisdiction has been dismissed.

This case was filed fourteen months ago and extensive discovery has been completed. Although there was a federal claim asserted, state law has tended to predominate.[11] Indeed, at oral argument, on May 29, 1992, the plaintiff acknowledged that the state claims of waste and breach of fiduciary duty have taken precedence over the federal claims. Moreover, the documents appended to the two separate summary judgment motions submitted reveals that the focus of discovery was primarily on the state claims concerning breach of fiduciary duty and corporate waste. The summary judgment motions themselves emphasized the state claims.

The content and extent of fiduciary duties, corporate waste and the business judgment rule are fundamental issues of state law. In addition, there is no overlap with the content of the alleged § 14(a) violations. While we have had several conferences with the parties, have decided three motions, and are familiar with the issues in this litigation, we do not believe that we should reach out our jurisdictional arm to embrace issues of a state character thereby depriving the state courts of the opportunity to develop and apply state law in this area particularly when there are no federal claims requiring a trial.

Plaintiff suffers no prejudice by this dismissal. He may refile his state law claims within six months of this decision, *see* N.Y.C.P.L.R. § 205; 28 U.S.C. § 1367(d), and, in any case, these claims are not time-barred, *see* N.Y.C.P.L.R. § 213 (six year statute of limitations for shareholder derivative suits). The discovery conducted in this suit can be used in the state suit and will reduce extensively the need for discovery in the state action, hastening that case to trial.

**11.** Under § 1367(c)(2), the predominance of state law claims, independent of the dismissal of the federal claim, would be sufficient grounds for this court to dismiss plaintiff's state law claims.

## CONCLUSION

Summary judgment is granted in favor of the defendants on counts 1 and 4. Counts 2, 3, and 5 are dismissed for lack of subject matter jurisdiction.

SO ORDERED.