Daniel **SAMSON**, Plaintiff,

v.

**HARVEY'S LAKE BOROUGH, et al., Defendants.**

No. 3:CV–93–0868.

United States District Court, M.D. Pennsylvania.

March 7, 1995.

Michael Scott Melnick, Dist. Attorney's Office, Luzerne County, Wilkes Barre, PA, for plaintiff.

Ralph E. Kates, III, Wilkes Barre, PA, for defendants.

## *MEMORANDUM*

VANASKIE, District Judge.

This action arises out of the termination of Plaintiff Daniel Samson ("Samson") as the zoning officer/building inspector for Harvey's Lake Borough. Samson sued the Harvey's Lake Borough Council and individual council members under 42 U.S.C. § 1983 for violation of his right to due process, with jurisdiction premised on 28 U.S.C. § 1343. He has also asserted state law claims for wrongful termination and breach of contract. Samson's claims are premised on the contention that he could be removed from his position with the borough only "for cause."

The Defendants have moved to dismiss the Complaint or, in the alternative, for summary judgment. The Defendants claim that dismissal of this action is warranted because Samson was an independent contractor

whose relationship with the borough could be terminated for any reason. The Defendants thus assert that Samson's position with the borough did not enjoy Fourteenth Amendment due process protection.

Because I find that Samson's position with the borough was *not* subject to a "for cause" termination restriction, the Defendants' motion for summary judgment as to Samson's civil rights claims will be granted. In addition, Samson's state law claims will be dismissed on the authority conferred by 28 U.S.C. § 1367(c)(3).

## BACKGROUND

On January 2, 1990, Harvey's Lake Borough appointed Samson as its "Zoning Officer/Building Inspector." Samson was reappointed to the position in January of 1991, 1992 and 1993. *See* Dkt. Entry 13, Exhibits 1 and 2.

At the time of Samson's appointment, the BOCA National Building Code was the effective Harvey's Lake Borough building ordinance.[1] (Ord. No. 2–77, adopted February 24, 1977.) The BOCA Code contains the technical construction standards for the borough. It also contains a variety of potential employment positions created in a "Department of Building Inspection." Among the potential employment positions is that of "Building Official."[2] From 1977 to February, 1993, the BOCA Code and its ordinances were in effect, but Harvey's Lake Borough did not employ a "building official" as contemplated by the BOCA Code.

The building official as defined in the Code is a significant municipal administrative position. The building official is supervised by and reports to the Borough Council and supervises employees.[3] Harvey's Lake Code § 7–3(7) (which adopted the modified BOCA Code) states the qualifications of the building official:

The Building Official shall be generally informed on good engineering practice in respect to the design and construction of buildings, the basic principles of fire prevention, the accepted requirements for means of egress and the installation of elevators and other service equipment necessary for the health, safety and general welfare of the occupants.[4]

Furthermore, the building official has the authority to "adopt and promulgate rules and regulations to interpret and implement the provisions of this [BOCA] code to secure the intent thereof...." BOCA Code, § 108.6.[5]

The zoning officer/building inspector as defined by 53 P.S. §§ 10614 and 46202(24) is not required to be a borough employee. Section 10614 states that "[t]he zoning officer shall meet qualifications established by the municipality and shall be able to demonstrate to the satisfaction of the municipality a working knowledge of municipal zoning." Furthermore, the zoning officer is charged with administering the zoning ordinance "in accordance with its literal terms, and shall not have the power to permit any construction or any use or change of use which does not conform to the zoning ordinance." 53 P.S. § 10614. Section 46202(24) empowers the borough to appoint a "building inspector" to ensure that construction work conforms with ordinances "relating to buildings and housing, their construction, alteration, extension, repair and maintenance...."

On February 16, 1993, the Harvey's Lake Borough Council resolved to reorganize several municipal functions, including those of the zoning officer/building inspector and the police. (Dkt. Entry 13, Exhibit 3.) A new position of "Code Enforcement Officer" was created, responsible for enforcement of a variety of municipal ordinances, including the zoning ordinance. The code enforcement officer's responsibilities also included enforce-

1. "BOCA" stands for "Building Officials and Code Administrators International, Inc." It identifies itself as a non-profit service organization which develops model regulatory construction codes. In 1977, Harvey's Lake Borough adopted BOCA, with some modifications, as its building ordinance. *See* Dkt. Entry 13, Exhibit 8.

2. BOCA Code § 107.3. Dkt. Entry 13, Exhibit 8.

3. BOCA Code § 107.3.

4. BOCA Code § 107.5.

5. The language of § 108.6 is taken from Defendants' memorandum in support of their motion for summary judgment, Dkt. Entry 14 at 5.

ment of trash and grass ordinances and assisting in the preparation of grant applications. In anticipation of the restructuring, Samson was informed, in a letter dated February 15, 1993, that his services with the borough would be terminated. (Dkt. Entry 13, Exhibit 4.) The council appointed Paul Grimes to the position of code enforcement officer.

Samson commenced this action on June 10, 1993. An Amended Complaint was filed on his behalf on August 26, 1993. The Amended Complaint (Dkt. Entry 8) asserts four causes of action. First, Samson claims that he had a protected property interest in his position that could not be terminated without cause and an opportunity to be heard thereon. Count Two of the Complaint purports to assert a claim for denial of "substantive" due process. Specifically, Samson alleges that he was removed in retaliation for adverse action he had taken against Councilmen William Wilson and Joseph Miscavage in 1991 and 1992.[6] Counts Three and Four assert state law claims for wrongful discharge and breach of contract, respectively. Samson named as defendants in all four counts the borough, the borough council, and the members of the borough council.

On September 30, 1993, Defendants filed a Motion to Dismiss the Amended Complaint or, in the alternative, for Summary Judgment. Accompanying the motion was an "Affidavit of Defendants" (Dkt. Entry 13), which included a number of exhibits. A supporting memorandum of law was filed on October 8, 1993. (Dkt. Entry 14.) Plaintiff filed an opposing brief on January 21, 1994 (Dkt. Entry 17), asserting, *inter alia*, that genuine disputes of material facts precluded summary adjudication of this case. A reply brief was filed on behalf of the Defendants on March 10, 1994. (Dkt. Entry 23.) This matter is ripe for disposition.

*DISCUSSION*

■ Summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* There is no issue for trial unless sufficient evidence favors the nonmoving party so that a jury could return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510. Rule 56 requires the entry of summary judgment where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Defendants' summary judgment motion raises the legal question of whether Samson had a protectible property interest in his position with the borough. To have a property interest in a governmental position, a person must "have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). A "legitimate claim of entitlement" may be derived from "an independent source such as state law...." *Id.*

■ Samson contends that his legitimate claim of entitlement to his position with the borough derives from § 107.2 of the BOCA Code, as adopted by the borough, which, in pertinent part, provides:

The Building Official shall be appointed by the chief appointing official of the jurisdiction; *and he shall not be removed from office except for cause and after full opportunity has been granted him to be heard*

**6.** It should be noted that there are seven members of the borough council, and the council acted unanimously in eliminating Samson's position and creating the position of Code Enforcement Officer. It should also be noted that both Miscavage and Wilson had voted for re-appointment of Samson in 1992 and 1993, after the incidents that form the alleged retaliatory motive occurred.

on specific and relevant charges by and before the appointing authority.[7]

It has been recognized that a "for-cause" termination provision may establish a protected property interest. *See Linan–Faye Constr. Co. v. Housing Authority of Camden,* 49 F.3d 915, 932 (3rd Cir.1995); *Sanguigni v. Pittsburgh Board of Public Education,* 968 F.2d 393, 401 (3rd Cir.1992); *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1399 (3rd Cir.1991).

Thus, the key question in this action is whether Samson was, as he claims, the building official, as contemplated by the BOCA Code, or the zoning official/building inspector, under 53 P.S. §§ 10614 and 42606(24). Although Samson contends that this matter may not be resolved on a summary judgment motion, the facts germane to the position he occupied are undisputed. Thus, resolution of the issue of whether Samson was the BOCA Code building official is properly decided on the basis of the record presented in this matter.

The borough council minutes for January, 1990 and 1993 (Dkt. Entry 13, Exhibits 1 and 2), state that Samson was appointed to the position of "Zoning Officer/Building Inspector." Furthermore, as noted above, the professional qualifications for the two positions differ markedly. The zoning officer must be "able to demonstrate to the satisfaction of the municipality a working knowledge of municipal zoning." 53 P.S. § 10614. The building official must have the objectively determinable qualifications of being "generally informed on good engineering practice in respect to the design and construction of buildings, the basic principles of fire prevention, the accepted requirements for means of egress and the installation of elevators and other service equipment necessary for the health, safety and general welfare of the occupants." BOCA Code, § 107.5, Ord. No. 2–77, § 7–3(7).

■ While Samson asserts that he was the building official as contemplated by the BOCA Code, he has not provided any information indicating that he meets the necessary qualifications of the building official. Samson also makes much of the fact that the pre-printed building permits he issued have the words "Building Dept" on their face. Samson argues that the forms indicate that there was in fact a Harvey's Lake "Department of Building Inspection" and, therefore, he was in fact the "building official" in charge. In the absence of other supporting evidence, I cannot find that a form containing the words "Building Dept" made Samson the BOCA building official.

■ Indeed, the fundamental flaw in Samson's argument is that because the borough adopted the BOCA Code provisions pertaining to a "building official," that position was necessarily filled. Contrary to Samson's assertion, the mere creation of a position by the terms of the BOCA Code did not require the borough to fill it. Samson has not proffered any evidence to suggest that the borough intended to appoint a BOCA building official who could be terminated only "for cause." The undisputed fact that Samson was appointed annually to his position and his admission that he was not "guaranteed" the position for a full year belie any intent to retain Samson as a building official who could be terminated only "for cause."[8]

Defendants also contend that a crucial distinction between the building official and the zoning officer/building inspector is that the building official is a borough employee while the zoning officer/building inspector is an independent contractor and, therefore, not a borough employee. Samson does not dispute the importance of the distinction, but argues that he was a borough employee.

■ The general common law of agency sets forth a number of factors as guides for determining whether an individual qualifies

7. Information pertaining to BOCA Code § 107.2 is taken from Plaintiff's memorandum in opposition to Defendants' motion for summary judgment, Dkt. Entry 17 at 1 and 3.

8. It should be noted that the borough's adoption of the BOCA Code was authorized by 53 P.S. § 46202(24), but that legislative provision does not require employment of a BOCA "building official" if the BOCA Code is adopted. On the contrary, that section contemplates appointment of "one or more building inspectors and/or housing inspectors."

as a "common-law" employee. RESTATEMENT (SECOND) OF AGENCY § 220 (1958); *see also Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 743, 109 S.Ct. 2166, 2174, 104 L.Ed.2d 811 (1989) ("[O]rdinary canons of statutory interpretation indicate that the classification of a particular hired party should be made with reference to agency law"). A determination that a party is either an employee or an independent contractor is a judicial one. *Donovan v. DialAmerica Marketing, Inc.,* 757 F.2d 1376 (3rd Cir.), *cert. denied,* 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985). Since there is no bright-line rule for determining who is an employee, courts examine and weigh all aspects of the relationship, with no one factor being decisive. *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322–24, 112 S.Ct. 1344, 1348–49, 117 L.Ed.2d 581, 590 (1992); *DialAmerica,* 757 F.2d at 1382.

Samson controlled his own hours and the manner of performing his work. While the borough supplied Samson with an office, desk, chair and file cabinets and paid for office supplies and his telephone in the borough building,[9] he supplied his own personal computer, car and gasoline. He was paid monthly, on a commission basis, not weekly, on an hourly basis, as other borough employees were compensated. Samson was not paid out of payroll, as are borough employees; instead he was paid as part of the administrative expenses of the borough, along with others, like the borough solicitor and auditor, who provided independent professional services. Samson did not accumulate vacation time, sick time or paid holidays, benefits to which all borough employees were entitled.

As evidence of his employee status, Samson argues that he was insured under three borough policies. *See* Dkt. Entry 17 at 4–5. The fact that Samson was an identified insured on borough insurance policies does not buttress his claim that he was a borough employee. The affidavit of Carol Samson, Plaintiff's wife (Dkt. Entry 24, Exhibit 10), clarifies that Samson received health insurance coverage from the borough *as the spouse of a borough employee,* not as an employee in his own right. Samson was designated individually on the policy solely because it was less expensive to insure him individually than to insure him as a family member.[10] Samson was also insured under the borough's Worker's Compensation policy. Michelle Boice, who handled the borough's Worker's Compensation Insurance, stated in her affidavit (Dkt. Entry 24, Exhibit 11) that Pennsylvania law requires independent contractors to provide their own Worker's Compensation Insurance or be covered by the borough policy. Harvey's Lake Borough carried Worker's Compensation coverage for its independent contractors, including Samson. The last policy to which Samson makes reference is the borough's bonding policy which insures against the risk of loss by anyone handling borough funds. As the zoning officer Samson handled application fees, which are borough funds. While Samson was covered by three borough insurance policies, it is not apparent from these policies that he was a borough employee.

As further evidence of his employee status, Samson submits that he was required to attend monthly council meetings and prepare reports. Attendance at council meetings and preparation of reports is not an indication of employee status; it does not indicate council supervision or control of ones's daily work activity. Samson himself indicates that the council did not exercise control over his daily activity. In his memorandum in opposition to the Defendants' motion for summary judgment (Dkt. Entry 17 at 5), Samson noted that "[f]rom time to time Council would tell Mr. Samson how to do his job and supervise him." Oversight "from time to time" is certainly not daily supervision. Furthermore, other "independent contractors," such as the solicitor, were required to attend meetings and report to the borough council.

The fact that perhaps most strongly indicates that Samson was an independent contractor and not a borough employee is that

---

9. *See* Dkt. Entry 18, Plaintiff's Answers to Interrogatories, number 9.

10. As the spouse of a borough employee Samson remains covered by the borough's health insurance policy. *See* Dkt. Entry 23 at 8.

Samson filed 1990 and 1991 IRS tax forms (Dkt. Entry 24, Exhibit 9) as a sole proprietor and reported income and expenses on Form 1040, Schedule C, entitled Profit or Loss from Business. Finally, Samson used Schedule SE to pay his own social security self-employment tax. *See generally E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, 33 (1983) (enumerating factors to consider in evaluating whether an individual is an employee versus an independent contractor, including tax treatment).

■■■ Taking all of the undisputed facts into consideration, I find that Daniel Samson was an independent contractor with the Harvey's Lake Borough. Accordingly, to the extent that the nature of Samson's relationship with the borough (employment or independent contractor) is relevant, the conclusion that Samson was an independent contractor buttresses the conclusion that he was not the borough building official.

Since Samson was not the BOCA building official he has not established a property interest in his position. Samson was appointed annually to his position and did not have a contract with the borough. Furthermore, *Samson admitted that no one on the council had ever stated that his position was guaranteed for even one year.* See Dkt. Entry 18, answer 11.

The maximum potential length of the relationship between Samson and Harvey's Lake Borough was one year.[11] *Id.* answer 12. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court held that an untenured college professor with a one year contract had no protected Fourteenth Amendment interest in re-employment for the following year. The

Supreme Court has not directly decided whether termination during a one year contract merits Fourteenth Amendment protection but federal courts are wary of becoming entangled in state contract disputes. *See Reich v. Beharry*, 883 F.2d 239, 242 (3rd Cir.1989); *S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 966 (2nd Cir.1988).[12]

Samson's case is weaker still as he did not have a written contract with the borough. Samson was appointed to his position at a borough meeting and, as noted above, he was never guaranteed that his position would remain intact for even one year.

■■■ Under these circumstances, Samson did not have a protected property interest in a one year contract with the borough. Accordingly, he was not entitled to any pre- or post-termination process when the borough eliminated his position. Therefore, Defendants are entitled to judgment as a matter of law on Samson's procedural due process claims.

In addition to his procedural due process claim, Samson asserts a substantive due process claim. Specifically, Samson alleges that he was terminated following incidents when he required individual Harvey's Lake Borough Council members, who were contractors, to comply with existing building ordinances, codes or laws. Samson alleges that in 1991, he prepared a permit for $95,000 for a home that Council President Miscavage was building. According to Samson, when Miscavage learned about possible tax consequences from such a project he requested a permit in the amount of $45,000. When Miscavage did not supply documentary evidence for the change, Samson sent in both permits. The second incident allegedly occurred in

11. In each year that Samson was appointed, he was appointed for a term of one year. In the Amended Complaint (Dkt. Entry 8) at ¶¶ 19, 20, 25, and 56, Samson refers to an implied one year term of employment. Samson however, did not address the implied one year term of employment in his brief in opposition to the Defendants' motion to dismiss.

12. As explained in *Reich v. Beharry*, 883 F.2d at 242:

So far as we have been able to determine, every court of appeals that has directly confronted the issue has concluded that although

state contract law can give rise to a property interest protectible by procedural due process, not every interest held by virtue of a contract implicates such process.... Many of these courts have observed that if every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities.

June, 1992, when Miscavage began a project on the Lebanc property. Samson alleges that Miscavage did not obtain permits or pay the required fees before beginning the project. Samson sent a certified letter notifying Miscavage that he was in violation of the law and a stop work order would be entered against him. The last incident allegedly occurred in September, 1992, when Councilman Wilson began a construction project at a local restaurant without obtaining a permit. Samson temporarily halted the project. *See* Dkt. Entry 17, at 6.

Samson's claim that he was terminated as a result of these incidents is belied by the fact that he was reappointed to the position of zoning officer/building inspector in January of 1992 and 1993, following the alleged incidents. Moreover, because Samson did not have a protected property interest in his position, his substantive due process claim is without merit.

 In light of the dismissal of Samson's federal law claims, it is appropriate to consider whether supplemental jurisdiction over Samson's state law claims should be declined. *See* 28 U.S.C. § 1367(c)(3).[13] Defendants moved for summary judgment during the early stages of this litigation, and before any substantial discovery was completed. Under the circumstances, it is appropriate to decline to exercise supplemental jurisdiction over Samson's state law claims. *Freer v. Mayer,* 796 F.Supp. 89 (S.D.N.Y.1992). *See also United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## CONCLUSION

From the facts presented in this case I find that Samson was an independent contractor and not a Harvey's Lake Borough employee. As an independent contractor Samson was appointed to the position of zoning official/building inspector pursuant to 53 P.S. §§ 10614 and 46202(24). Samson did not hold the position of building official under the BOCA Code. Therefore, Samson is not entitled to the protections of termination only for cause and a pre-termination hearing. For these reasons, the Defendants' motion for summary judgment will be granted. An appropriate Order is attached.

## ORDER

**AND NOW THIS 7TH DAY OF MARCH, 1995, IN ACCORDANCE WITH THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:**

1) Defendants' Motion for Summary Judgment (Dkt. Entry 12) is **GRANTED,** and judgment is to be entered in Defendants' favor on Plaintiff's claims under 42 U.S.C. § 1983.

2) Plaintiff's state law claims are dismissed for lack of subject matter jurisdiction.

3) The Clerk of Court is directed to close this case.

**13.** Section 1367(c)(3) provides that the district courts may decline to exercise supplemental jurisdiction over a claim that is so related to claims in the action within the district court's original jurisdiction that they form part of the same case or controversy if "the district court has dismissed all claims over which it had original jurisdiction."