37 F.3d 151
 63 USLW 2245
 RESOLUTION TRUST CORPORATION, in its corporate capacity,
Plaintiff-Appellant,
v.
Edgar S. EVERHART; Robert F. Babb; Hugh L. Dougherty, Jr.;
Thomas N. Downing; Philip S. Farrand; Roy B. Martin, Jr.;
Corbin B. White; Barkley C. Winn; Harry Knickerbocker;
Mrs.Frank M. Miles; Nations Bank, N.A. (formerly Sovran
Bank, N.A.), Trustee of the Frank M. Miles Family Trust A
and the Frank M. Miles Marital Trust B, Defendants-Appellees,
and
Richard Hamlet; Frank M. Miles; Patricia M. King, Defendants,
Virginia Beach Federal Savings Bank, Party in Interest.
 No. 93-2634.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 14, 1994.
Decided Oct. 13, 1994.
 
 ARGUED: James Arthur Johnson, Semmes, Bowen & Semmes, Baltimore, MD, for appellant. John K. Villa, Williams & Connolly, Washington, DC; Francis Nelson Crenshaw, Crenshaw, Ware & Martin, P.L.C., Norfolk, VA, for appellees. ON BRIEF: Richard A. Froehlinger, III, Semmes, Bowen & Semmes, Baltimore, MD; David M. Fitzgerald, Senior Counsel, RTC Professional Liability Section, Washington, DC, for appellant. John D. Cline, Williams & Connolly, Washington, DC; Timothy A. Coyle, Martha A. Poindexter, Crenshaw, Ware & Martin, P.L.C., Norfolk, VA; Jerrold G. Weinberg, Weinberg & Stein, Norfolk, VA; Melvin J. Radin, Norfolk, VA, Charles M. Lollar, Peter S. Lake, Heilig, McKenry, Fraim & Lollar, Norfolk, VA, Robert W. McFarland, Jerry Lee Bowman, McGuire, Woods, Battle & Boothe, Norfolk, VA, for appellees.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and PHILLIPS, Senior Circuit Judge.
 Affirmed by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge MURNAGHAN and Senior Judge PHILLIPS joined.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Atlantic Permanent Federal Savings and Loan Association ("AP"), a federally chartered and federally insured thrift institution, was placed under the receivership of the Resolution Trust Corporation ("RTC") on December 8, 1989. On December 7, 1992, RTC sued several of AP's former directors and officers for $17 million in losses allegedly caused by the defendants' negligence, gross negligence and breach of fiduciary duty. The losses arose from loans made by AP between 1981 and 1985. The U.S. District Court for the Eastern District of Virginia, exercising jurisdiction pursuant to 12 U.S.C. Sec. 1441a(l)(1), granted summary judgment in favor of the defendants, finding the claim barred by the Virginia statute of limitations, 837 F.Supp. 155. RTC appeals the district court's decision. For the reasons set forth below, we affirm.
 
 I.
 
 2
 AP was chartered as a mutual association in 1894 under the laws of the Commonwealth of Virginia. It received federal deposit insurance coverage from the Federal Savings and Loan Insurance Corporation in 1937. In 1981, it was granted a federal charter and in 1984, it converted to a stock form through the issuance of shares. AP later converted to a federal savings bank in December 1986.
 
 
 3
 In the 1980s, AP experienced financial difficulties. Most of its funds had been lent on fixed-rate long-term home mortgages, drawing 6% to 8% interest. When interest rates soared and it became necessary for AP to pay 12% on accounts to attract depositors, the negative spread caused losses, depleted AP's capital and pushed it towards insolvency. Robert Cohrs, the Federal Home Loan Bank Board Agent responsible for AP from 1980 to 1987, predicted in February 1982 that AP would be insolvent within two years.
 
 
 4
 In an attempt to address its financial problems, in 1981 AP began a program of purchasing participations in high-risk, short-term commercial construction loans in the sunbelt states. Cohrs was informed of this approach, J.A. 1196, and approved the strategy, J.A. 1202. Some of these loans proved profitable while others resulted in significant losses. All participation lending ended in 1985. This suit arises out of seven of these loans, which caused AP losses of more than $17 million.
 
 II.
 
 5
 RTC, as receiver, steps into the shoes of a failed savings bank, obtaining the rights of the insured depository institution that existed prior to receivership. O'Melveny & Myers v. FDIC, --- U.S. ----, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). RTC may pursue any claims the institution might have against its officers or directors once RTC becomes receiver of that institution. 12 U.S.C. Sec. 1821(d); FDIC v. Cocke, 7 F.3d 396, 399 (4th Cir.1993). Where a claim is no longer viable at the moment the institution goes into receivership because of the running of the applicable statute of limitations, however, RTC cannot revive the claim. Cocke, 7 F.3d at 402. The first step in deciding whether RTC presents a valid claim, therefore, is to determine whether the institution could have brought the claim at the time of its receivership.
 
 
 6
 The question presented here is whether to apply state or federal common law in making that determination. RTC argues that where the failed institution is federally chartered, federal law must apply. We disagree.
 
 
 7
 In Cocke, a case involving a failed federally-insured savings and loan association chartered under Virginia law, we determined that the applicable statute of limitations was that provided by Virginia law. We found that the breach of duty claims were authorized and enabled by state law and that therefore "the applicable state statute of limitations controls whether the action is viable when the right to bring the action inures to the [RTC]...." 7 F.3d at 400. The Fifth Circuit applied similar reasoning in its decision in FDIC v. Dawson, 4 F.3d 1303 (5th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994). In that case involving claims brought by the FDIC, as receiver for a federally chartered savings and loan, against former directors of the failed institution, the court held that "the district court must first determine whether the claims being brought by the FDIC were viable under the applicable state statute of limitations at the time the FDIC was appointed receiver." Id. at 1307 (emphasis added). See also, White v. FDIC, 122 F.2d 770 (4th Cir.1941) (applying state statute of limitations to claims of national bank), cert. denied, 316 U.S. 672, 62 S.Ct. 1043, 86 L.Ed. 1747 (1942); FDIC v. Bachman, 894 F.2d 1233, 1236 (10th Cir.1990); RTC v. Hecht, 833 F.Supp. 529 (D.Md.1993) (applying state statute of limitations to claims by RTC against former directors of failed federal savings and loan).
 
 
 8
 The RTC argues that we should look to the place of incorporation to determine the controlling law and that because AP is federally chartered, federal common law controls. It has submitted as supplemental authority the Seventh Circuit's decision in RTC v. Chapman, 29 F.3d 1120 (7th Cir.1994). In that case, the court found that because the failed institution held a federal charter, "national" law governed the liability of officers and directors for their management. Id. at 1123. We find the Seventh Circuit's reasoning unpersuasive. Chief Judge Posner wrote a dissent in Chapman with which we agree. The failed savings and loan in that case, as in the case at hand, had been a state institution for nearly a century and had obtained its federal charter only a few years before its insolvency. Posner writes:
 
 
 9
 In cases of directors' liability, automatic reference to the law of the state of incorporation is rejected. E.g., Norlin Corp. v. Rooney, Pace Inc., 744 F.2d 255, 263-64 (2d Cir.1984); Mansfield Hardwood Lumber Co. v. Johnson, 268 F.2d 317, 320-21 (5th Cir.1959); Ficor, Inc. v. McHugh, 639 P.2d 385 (Colo.1982). Instead the [internal affairs] doctrine is interpreted to only presumptively apply the law of the state of incorporation. Restatement (Second) of Conflict of Laws Sec. 309 comment c (1971). The presumption can be rebutted by reference to (among other things) "justified expectations," "certainty," and "ease in the determination and application of the law to be applied." Id., Secs. 6(d), 6(f), 6(g), 309. All are considerations that favor the application of [state] law to this case. Consider justified expectations: Everyone connected with [the failed institution] would have thought [state] law applicable to a dispute of this character. [The institution] had been a [state] corporation for a century, and nothing in the text or provision of the statute under which it converted to a federal S & L would have suggested that the liability of its directors or officers was being altered by the change. 12 U.S.C. Sec. 1464(i)(1); S.Rep. No. 536, 97th Cong., 2d Sess. 13-15, 53 (1982).... Consider next certainty and ease in the determination and applica[tion] of the law. This case well illustrates the difficulty of determining the rule of decision if federal law, the law of the chartering jurisdiction, is applied instead of the law of the S & L's principal place of business. For it is far from clear that [federal statute], rather than federal common law, is the place to find that rule, and it is also unclear, as we shall see, just what the federal common law rule is. There is no comparable uncertainty about the contents of the [state] law of directors' liabilities. Finally, the policy animating the presumption in favor of applying the law of the state of incorporation, the policy of shielding directors and officers from conflicting legal obligations, is not engaged by the facts of this case, as there is no suggestion that these directors have been or will be sued under the law of another state.
 
 
 10
 When these considerations are taken into account, as they should be if we are to be faithful to the internal-affairs doctrine as it has been traditionally understood, it seems plain that the doctrine does not require the application of federal law in this case.
 
 
 11
 Id. at 1126, 1127.
 
 
 12
 AP similarly had been a state institution since 1894, obtaining its federal charter in 1981, only eight years before it was taken over by RTC. We find that settled expectations and the other relevant criteria noted by Judge Posner require the application of Virginia law to suits against AP's former directors. This is not an appropriate case for the creation of federal common law.
 
 
 13
 This result is further supported by the Supreme Court's recent pronouncement in O'Melveny & Myers. In that case, the FDIC sued the attorneys for a failed California savings and loan association. The attorneys argued that the S & L's officers' knowledge of fraudulent conduct could be imputed to the FDIC as receiver. The FDIC first claimed that generally federal law governs the imputation issue. The Court found this contention "plainly wrong" because there is no federal common law and "the remote possibility that corporations may go into federal receivership is no conceivable basis for adopting a special federal common-law rule divesting States of authority over the entire law of imputation." O'Melveny, --- U.S. at ----, 114 S.Ct. at 2051, 129 L.Ed.2d at 73.
 
 
 14
 The FDIC next claimed that federal law governed because the FDIC was suing as receiver of the corporation, and that the FDIC's involvement made the issue a federal one. The Court determined that state law governs this issue. Id. at ----, 114 S.Ct. at 2055, 129 L.Ed.2d at 75. The Court found that the FDIC was exercising not the rights of the government, but rather the rights of the failed institution in its suit, id. at ---- - ----, ----, 114 S.Ct. at 2054, 2055, 129 L.Ed.2d at 74-75, 76, and as such, the case did not warrant the creation of federal common law. Id. at ----, 114 S.Ct. at 2055, 129 L.Ed.2d at 77. Federal common law is appropriately made only where there is a significant conflict between some federal policy or interest and the use of state law. Id. at ----, 114 S.Ct. at 2055, 129 L.Ed.2d at 75 (quoting Wallis v. Pan American Petroleum Corp., 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966)). The Court in O'Melveny found no such important federal policy associated with the FDIC's regulation of failed federally insured savings institutions. If the substantive question of imputation of knowledge to the FDIC is not sufficient to justify the creation of federal common law but rather is guided by state law, surely the procedural question of the applicable limitations period is likewise governed by state law. We find that the district court correctly determined that Virginia's statute of limitations controlled.
 
 III.
 
 15
 We must next determine whether the district court properly applied Virginia law. Virginia provides a one-year statute of limitations for every personal action for which no other limitation is otherwise prescribed. Va.Code Ann. Sec. 8.01-248 (Michie 1992). This court has determined that this statute is the most appropriate one for breach of duty claims brought by federal receivers against former directors of a failed savings and loan. Cocke, 7 F.3d at 402. If one year expired from the accrual of the cause of action before RTC gained its interest in the action through receivership, then RTC gained a stale claim and may not pursue it. Id.
 
 
 16
 Because the cause of action accrued in 1985 and the RTC gained rights to the action in 1989, the only possible way RTC gained a viable claim is if the Virginia statute of limitations was somehow tolled while the defendant directors were in control of AP. RTC urges that the federal doctrine of adverse domination provides for such tolling. It argues that because AP is a federally chartered institution, even if the court borrows the state statute of limitations, it must use federal tolling provisions. That argument was addressed by the Supreme Court in Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The Court held that
 
 
 17
 any period of limitation ... is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action.... [T]he limitation period is interrelated with provisions regarding tolling, revival, and questions of application.
 
 
 18
 Id. at 463-64, 95 S.Ct. at 1722. The Court held that federal courts borrowing state statutes of limitation must also borrow state tolling provisions. Id.
 
 
 19
 This court has determined that Virginia does not recognize adverse domination. Cocke, 7 F.3d at 402. We held in Cocke, however, that Virginia's statute of limitations would be tolled if its equitable estoppel doctrine applied. Id. To apply equitable estoppel to toll the statute in Virginia, there must have been some intentional concealment by the directors of the wrongful conduct. Id. (quoting Richmond Redev. & Hous. Auth. v. Laburnum Constr. Corp., 195 Va. 827, 80 S.E.2d 574, 582 (1954)). The RTC concedes that there was no such concealment alleged. J.A. 1378, 1415. Therefore, equitable estoppel is not available to toll the statute of limitations. The claims against AP's directors expired in 1986; RTC did not acquire a viable claim in 1989.
 
 IV.
 
 20
 For the reasons set forth above, we affirm the district court's grant of summary judgment.
 
 
 21
 AFFIRMED.