**RESOLUTION TRUST CORPORATION, Plaintiff,**

v.

**Wilson M. WILLIAMS, David D. Padgett, Sr., et al., Defendants.**

Civ. A. No. 93–2018–GTV.

United States District Court, D. Kansas.

May 16, 1995.

1416

Lawrence D. Greenbaum, Charles A. Getto, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, David A. Vorbeck, Philip J. Adams, Jr., Resolution Trust Corp., Overland Park, KS, T. Daniel Venters, Shawnee, KS, for Resolution Trust Corp.

John C. Aisenbrey, Stinson, Mag & Fizzell, Kansas City, MO, Terence J. Thum, Bryan Cave, Kansas City, MO, Michael W. Lerner, The Law Office of Mick Lerner, P.A., Overland Park, KS, for Wilson M. Williams.

Michael Thompson, John G. Mazurek, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for James E. Grier.

Mark J. Eichholz, Hackler, Hinkle, Martin & Hackler, Chtd., Olathe, KS, for Harry H. Harrison.

Harry H. Harrison, Shawnee Mission, KS, pro se.

Anthony F. Rupp, Shughart, Thomson & Kilroy, Overland Park, KS, Thomas A. Sheehan, Russell S. Jones, Jr., W. James Foland, Jane A. DeJong, Shughart, Thomson & Kilroy, Kansas City, MO, for Gary Huston.

Mark A. Stites, Stinson, Mag & Fizzell, Overland Park, KS, John C. Aisenbrey, Stinson, Mag & Fizzell, Kansas City, MO, Michael W. Lerner, The Law Office of Mick Lerner, P.A., Overland Park, KS, for David D. Padgett, Sr.

Mark A. Stites, Stinson, Mag & Fizzell, Overland Park, KS, John C. Aisenbrey, Stinson, Mag & Fizzell, Terence J. Thum, Kansas City, MO, James L. Eisenbrandt, Bryan Cave, Overland Park, KS, Michael W. Lerner, The Law Office of Mick Lerner, P.A., Overland Park, KS, for William B. Williams.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This case is before the court on the Motion of Defendants Wilson M. Williams and David D. Padgett, Sr. for Partial Summary Judgment (Doc. 241). In this action, plaintiff Resolution Trust Corporation (RTC), as receiver of Colonial Savings Association (Colonial), seeks monetary damages from defendants Wilson M. Williams and David D. Padgett, Sr., former officers and directors of Colonial, for negligence, gross negligence, and breach of fiduciary duties. In their motion, defendants seek dismissal of plaintiff's claims of simple negligence and breach of fiduciary duties based on simple negligence. Further, defendants seek summary judgment on plaintiff's claims for damages based on defendants' approval of two loans made in connection with Pinebrooke Condominiums. Plaintiff has responded and opposes the motion. For the reasons set forth below, the motion is denied.

### I. BACKGROUND

The following facts are established in accordance with Fed.R.Civ.P. 56 and D.Kan. Rule 206(c):

Colonial began as a state-chartered savings and loan association located in Prairie Village, Kansas. Colonial became a federally-chartered savings and loan association on November 2, 1983. Defendant Williams served in various capacities during the times relevant to this action including president of Colonial and chairman of the board of directors. Defendant Padgett also served as president of Colonial and as a director during the relevant time period.

On January 17, 1990, the Office of Thrift Supervision (OTS) declared Colonial insolvent and appointed the RTC as receiver for Colonial. The RTC as receiver acquired all causes of actions against officers and directors of Colonial. On January 15, 1993, RTC filed the present case against former officers, directors, and attorneys of Colonial. The complaint alleges negligence, gross negligence, and breach of fiduciary duties based on three activities: (1) Colonial's financing of three transactions involving the purchase of the Pinebrooke Condominiums; (2) Colonial's securities hedging program; and (3) Colonial's automobile lending programs.

Defendants seek summary judgment on plaintiff's claims of simple negligence and breach of fiduciary duties based on simple

negligence. Defendants also seek dismissal of plaintiff's claims based on the first two Pinebrooke transactions.

*The Pinebrooke Condominium Transactions*

The following facts are relevant to Colonial's financing of the Pinebrooke Condominium loans:

On April 6, 1979, Colonial granted a loan to a partnership known as Wilson–Maybery for the purchase of a number of Pinebrooke Condominium units. Defendants designate this as the first Pinebrooke transaction. After default by the Wilson–Maybery Partnership, Colonial obtained title to the remaining Pinebrooke Condominium units in July or August 1980 by taking a deed in lieu of foreclosure.

In May 1981, Colonial still held title to the Pinebrooke Condominiums. At that time the book value of the condominiums was $5,812,-501, and Colonial's interest in them was $3,356,672. Colonial Investors, Inc., an entity owned by defendant Williams, purchased Colonial's interest in the Pinebrooke Condominiums for $5,950,000. This amount exceeded the dollar value of Colonial's interest in the condominiums. Defendants designate this purchase as the second Pinebrooke transaction.

As of October 1982, the amount remaining due from Colonial Investors on the loan was approximately $2,323,700. In October 1982, Colonial Investors sold 38 of the 48 units secured by the Colonial Investors loan to First Diversified Investment Services, Inc. (FDIS) for $2,718,760. Colonial loaned FDIS the full purchase price. The FDIS loan was guaranteed by Mr. and Mrs. Michael Russell and Dr. and Mrs. William Worley whose financial statements showed a combined net worth of $16,105,112. In October 1987, FDIS defaulted on the loan.

RTC seeks damages from defendants for the unpaid principal balance on the FDIS loan of $2,718,760, plus interest accruing on the loan before and after default, less the net sale proceeds and net rental received by the RTC from the remaining Pinebrooke Condominiums.

## II. SUMMARY JUDGMENT STANDARDS

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## III. Discussion

### A. Negligence Standard

Defendants seek summary judgment on all claims in the complaint which are based on simple negligence of the defendants. Defendants make several arguments in support of its assertion that the standard of liability of defendants in this action is gross negligence. First, defendants argue that only federal law governs actions involving federally-chartered savings and loan associations. Second, de-

fendants argue that the standard under federal law is gross negligence. Finally, defendants assert that even if state law were to apply, there is no cause of action for simple negligence under Kansas law.

### 1. What Law Applies?

Defendants argue that under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), the standard is gross negligence, not simple negligence. Section 1821(k) of FIRREA provides in part:

A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation—

(1) acting as conservator or receiver of such institution, ...

for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

12 U.S.C. § 1821(k). Defendants assert that because there is no mention of ordinary or simple negligence in the statute, no federal cause of action for simple negligence was created.

The RTC argues that the last sentence of § 1821(k) is a "savings clause" that saves a simple negligence action against officers and directors of a failed financial institution if federal common law or state law provides such an action. In *FDIC v. Canfield*, 967 F.2d 443 (10th Cir.) (*en banc*), *cert. denied*, —— U.S. ——, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992), the Tenth Circuit Court of Appeals held that § 1821(k) does not preempt state statutory or common law permitting actions for simple negligence. "Under the statute then, any other law providing that an officer or director may be held liable for simple negligence survives; such a law would be an 'other applicable law,' and construing the statute to bar its application would 'impair' the FDIC's [or RTC's] rights

under it." *Id.* at 446. The court rejected the argument that § 1821(k) created a national standard of liability. *Id.* at 447. *Canfield* involved a state-chartered financial institution, although the court did not appear to base its holding on that fact. Under *Canfield*, a state law cause of action for simple negligence survives § 1821(k).

In a recent decision by the Tenth Circuit Court of Appeals, the court held that 12 U.S.C. § 1821(k) supersedes federal common law predicating liability upon simple negligence. *RTC v. Frates*, 52 F.3d 295 (10th Cir.1995) (relying on similar decisions in three other circuits: *RTC v. Gallagher*, 10 F.3d 416 (7th Cir.1993); *RTC v. Miramon*, 22 F.3d 1357 (5th Cir.1994); *FDIC v. Bates*, 42 F.3d 369 (6th Cir.1994)). The court rejected the RTC's assertion that *Canfield* had already addressed the issue, pointing out that *Canfield* involved the "preemption of state law" while *Frates* involved the less rigorous test of "supersession of federal common law." Under *Frates*, the RTC cannot rely on federal common law to support its claims of simple negligence against defendants Williams and Padgett.

This court does not believe that *Canfield* and *Frates* directly speak to the issue raised by defendants: Can the RTC assert simple negligence claims against the officers and directors of a federally-chartered financial institution under 12 U.S.C. § 1821(k) and state law? Defendants assert that *Canfield* is inapposite because it involved claims against directors and officers of a *state-chartered* institution while the present case involves a *federally-chartered* institution. The court, however, does not find any such distinction in the *Canfield* holding. Nor does 12 U.S.C. § 1821(k) make such a distinction. *See RTC v. Gregor*, 872 F.Supp. 1140, 1149 n. 11 (E.D.N.Y.1994)

Defendants urge the court to embrace the analysis and holding of *RTC v. Chapman*, 29 F.3d 1120 (7th Cir.1994). In *Chapman*, the Seventh Circuit Court of Appeals agreed with *Canfield*'s interpretation of the savings clause in § 1821(k) and held that "the RTC may take advantage of any claims available under state law." *Id.* at 1122. The court then considered the question of whether the

RTC had any claims available against the officers and directors of a federally-chartered financial institution for simple negligence under state law. The court applied choice of law principles and the "internal affairs doctrine" to reach the conclusion that the RTC was limited to the federal standard of gross negligence as provided in § 1821(k). *Id.* at 1122–24. Under the internal affairs doctrine, the court must look to the law of the state of incorporation to determine the standard of care. Thus, because the financial institution held a federal charter, the *Chapman* court concluded that one must look to see if federal law speaks to the liability of officers and directors for their management. *Id.* at 1123. The *Chapman* court went on to hold that § 1821(k) adopts gross negligence as the rule for officers and directors of federal financial institutions. *Id.*

In his dissent in *Chapman,* Judge Posner pointed out several flaws in the majority opinion. First, the purpose of § 1821(k) was to preempt state laws to the extent that they shielded directors from liability for gross negligence or worse conduct. *Id.* at 1126 (Posner, J., dissenting); *accord Canfield,* 967 F.2d 443, 448 n. 6 (legislative history of § 1821(k) supports the conclusion that the statute acts as a partial preemption of state laws which attempt to insulate directors and officers from liability while it permits suits based on a lower standard of care such as simple negligence). "Congress ... believed that by passing section 1821(k) it was empowering the RTC to obtain damages whenever directors were grossly negligent (or worse), regardless of the provisions of state law." *Chapman,* 29 F.3d at 1126 (Posner, J., dissenting).

Second, "[t]here is no evidence that Congress believed it was creating a new immunity for directors of federal S & Ls by depriving the RTC of the benefit of state laws that imposed higher duties on directors." *Id.* Congress did not state in either the language of § 1821(k) or in the legislative history of the statute that it intended to make any distinction based upon whether the federally insured financial institution was operating under a federal charter or a state charter.

*See RTC v. Fiala,* 870 F.Supp. 962, 969 (E.D.Mo.1994).

Finally, Judge Posner believed that the majority misapplied the internal affairs doctrine. The doctrine only presumptively applies the law of the state of incorporation. Because the financial institution held a federal charter, the majority in *Chapman* reached the conclusion that only federal law applied. The problem with this conclusion lies in the fact that "[t]he presumption can be rebutted by reference to (among other things) 'justified expectations,' 'certainty,' and 'ease in the determination and application of the law to be applied.'" *Chapman,* 29 F.3d at 1126–27 (citing Restatement (Second) of Conflict of Laws §§ 6(2)(d), 6(2)(f), 6(2)(g), 309). Judge Posner concluded that all three factors favored the application of Illinois law.

■ Applying these three factors in the present case, the court concludes that they favor application of Kansas law. First, like *Chapman,* the present case involves a financial institution that began under a state charter and that converted to a federal charter on November 2, 1983, less than seven years before it was declared insolvent by the OTS. It is doubtful that the officers and directors had a justified expectation that Kansas law would no longer apply to their actions.

■ Second, certainty and ease in the determination of applicable law favor application of Kansas law. The case law illustrates that courts are struggling to determine the rule of decision if federal law, the law of the chartering jurisdiction, is applied instead of the law of the financial institutions principal place of business. *Id.* at 1127 (Posner, J., dissenting). There is no general federal corporation law which sets out the standard of care imposed on the officers and directors of federally-chartered financial institutions. *See id.* at 1123. The *Chapman* court found the gross negligence standard in 12 U.S.C. § 1821(k). Section 1821(k) is a provision of FIRREA, however, and would not apply to cases where the shareholders of a solvent federal financial institution brought suit against its officers and directors. It is unclear under *Chapman* where the court would find the standard of care in that situation: federal common law or state law? The Unit-

ed States Supreme Court soundly disapproved of the creation of federal common law in *O'Melveny & Meyers v. FDIC,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). It appears that a better choice would be state law. *See Wichita Federal Savings and Loan Association v. Black,* 245 Kan. 523, 781 P.2d 707 (1989) (court applied state common law standard of negligence in a suit by a *federally-chartered* S & L against its former president). Thus, the court concludes that application of state law creates more certainty as to the standard of care applicable. Barring such a conclusion, officers and directors could be subject to different standards of care before insolvency than after.

Finally, the court notes the practical difficulties of adopting a gross negligence standard under § 1821(k) for federally-chartered financial institutions while applying the state standard for state-chartered institutions under *Canfield.* For instance, Colonial originally operated under a state charter before it obtained a federal charter in 1983. Some of the acts of negligence alleged by the RTC occurred before 1983, some after. Thus, the court would have to apply a simple negligence standard to acts before November 2, 1983 and apply a gross negligence standard to acts after that date.

The court's decision not to follow *Chapman* is supported by at least three other decisions. *See RTC v. Everhart,* 37 F.3d 151 (4th Cir.1994); *RTC v. Fiala,* 870 F.Supp. 962, 969 (E.D.Mo.1994) (the court found the state/federal distinction "nonsensical"); *RTC v. Gregor,* 872 F.Supp. 1140 (E.D.N.Y.1994). Both of the courts in *Everhart* and *Gregor* agreed with Judge Posner's dissent regarding the application of the internal affairs doctrine.

In *Everhart,* the court rejected the RTC's argument that under the internal affairs analysis of *Chapman,* the court should apply a federal common law statute of limitations because the failed financial institution held a federal charter. *Everhart,* 37 F.3d at 153. The court found that "settled expectations and other relevant criteria noted by Judge Posner require the application of Virginia law to suits against [the savings and loan's] former directors." *Id.* at 154. The savings and loan in *Everhart* similarly had been a state institution prior to obtaining a federal charter.

In *Gregor,* the court held that 12 U.S.C. § 1821(k) did not preempt the RTC's claim against the directors of a federally-chartered institution for simple negligence under state law. *Gregor,* 872 F.Supp. at 1149–50. Applying Judge Posner's analysis regarding the internal affairs doctrine, the court looked to state law to determine the standard governing directors liability. *Id.* at 1150.

The court concludes that it should not dismiss RTC's claims based on simple negligence if the applicable state law provides such a standard.

### 2. Kansas Law

■ Defendants argue that even if Kansas substantive law applies, there is no cause of action for simple negligence. The court disagrees.

During its 1993 session, the Kansas Legislature passed K.S.A. § 17–5831 (Supp.1994) (effective May 20, 1993), which provides in part:

> Except for persons who are executive officers, an officer or director of a savings and loan association, federal savings association or federal savings bank shall have no personal liability to the savings and loan association, federal savings association or federal savings bank or its members or stockholders for monetary damages for breach of duty as an officer or director, except that such liability shall not be eliminated for: (a) Any breach of the officer's or director's duty of loyalty to the association or bank, its members or stockholders; (b) acts or omissions which constitute willful or gross and wanton negligent breach of the officer's or director's duty of care; (c) acts in violation of K.S.A. 17–5412, 17–5811 and 17–5812 and amendments thereto; or (d) any transaction from which the officer or director derived an improper personal benefit.

Section 17–5831 limits the potential personal liability for certain officers and directors of savings and loan associations. "In 17–5831, the legislature essentially overruled the ex-

isting common law in Kansas under which 'outside' directors of savings and loan associations could be held liable for negligence and breach of fiduciary duty." *RTC v. Fleischer*, 257 Kan. 360, 892 P.2d 497 (1995) (citing *Wichita Fed. Sav. & Loan Ass'n v. Black*, 245 Kan. 523, 530, 781 P.2d 707 (1989); *Federal Sav. & Loan Ins. Corp. v. Huff*, 237 Kan. 873, 704 P.2d 372 (1985)); *see also RTC v. Fleischer*, 862 F.Supp. 309, 312 (D.Kan. 1994) (citing *Huff* in support, Judge Lungstrum wrote: "Kansas law, prior to the enactment of K.S.A. § 17–5831, clearly established duties of care for directors and officers of savings and loans and allowed actions against such persons in simple negligence for breach of such duty."). During the 1994 session, the Kansas Legislature attempted to make section 17–5831 retroactive by passing S.B. 762, now codified at K.S.A. §§ 9–1133 and 9–1134 (Supp.1994). Section 9–1133 states that K.S.A. § 17–5831 shall "apply to an action brought against an director or officer of an insured depository institution, regardless of whether the action was filed before, on, or after May 20, 1993, unless the action was finally adjudicated before May 20, 1993." On March 17, 1995, the Kansas Supreme Court held that S.B. 762 which provided for retroactive application of K.S.A. § 17–5831 is unconstitutional under the Kansas Constitution. *RTC v. Fleischer*, 257 Kan. 360, 892 P.2d 497 (1995).

The events which form the basis of plaintiff's negligence claims against defendants occurred prior the effective date of K.S.A. § 17–5831. Thus, plaintiff can assert simple negligence claims under state law. The court will not dismiss plaintiff's claims of simple negligence or for breach of fiduciary duty based on simple negligence.

## B. Pinebrooke Transactions

■ Defendants argue that the court should grant summary judgment on the RTC's claims for negligence, gross negligence, and breach of fiduciary duties based on Colonial's financing of the first two Pinebrooke Condominium transactions. Defendants assert that summary judgment is appropriate because Colonial suffered no damages in those transactions.

Plaintiff does not dispute that, on paper, Colonial suffered no damages in the first two Pinebrooke transactions. Instead, plaintiff asserts that it should be allowed to show that the three transactions involved a continuing course of conduct that resulted in substantial losses to Colonial. Plaintiff argues that the Pinebrooke loans were a series of ill-advised transactions by defendants and that it should be allowed to present evidence to that effect.

Plaintiff does not state separate causes of action based on each of the three Pinebrooke transactions. Instead, plaintiff seeks to present evidence that negligence and breach of fiduciary duties occurred in each of the series of Pinebrooke transactions which resulted in the loss. The court does not believe that summary judgment is appropriate in this situation. The court will not limit the plaintiff's evidence at this stage in the litigation.

IT IS, THEREFORE, BY THE COURT ORDERED that the motion of defendants Wilson M. Williams and David D. Padgett, Sr. for partial summary judgment (Doc. 241) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**